11 A.3d 420

PAUL G. SKLODOWSKY, PLAINTIFF–APPELLANT, v. JOHN F. LUSHIS, JR., ESQ., AND TALLMAN, HUDDERS & SORRENTINO, A PROFESSIONAL CORPORATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 7, 2010—Decided February 2, 2011.

See also 2008 WL 2744247.

Before Judges PARRILLO, YANNOTTI and SKILLMAN.

*Thaddeus P. Mikulski, Jr.*, argued the cause for appellant.

*George M. Vinci, Jr.*, argued the cause for respondents (*Spector Gadon & Rosen, P.C.*, attorneys; *Randi A. Wolf,* on the brief).

The opinion of the court was delivered by

YANNOTTI, J.A.D.

Plaintiff Paul G. Sklodowsky appeals from an order entered by the Law Division on March 19, 2010, which dismissed his claims against defendants John F. Lushis, Jr. (Lushis) and Tallman, Hudders and Sorrentino, P.C. (THS) with prejudice. For the reasons that follow, we reverse.

Plaintiff is a New Jersey resident. Lushis is an attorney admitted to practice in Pennsylvania. He was a member of THS, a professional corporation based in Pennsylvania. In 2003, plaintiff retained Lushis to provide him with legal advice regarding the sale of certain real property in Kingwood Township, New Jersey.

Plaintiff allegedly told Lushis that he was the sole record owner of the property, and that he wanted to transfer title to the property without the consent of his wife, Joanne Sklodowsky (Joanne), with whom he was having marital difficulties. Plaintiff claims that Lushis advised him that he could transfer title without Joanne's consent, but she would have an interest in the proceeds of the sale.

Allegedly based on this advice, plaintiff entered into a contract to sell the property to American Developers of New Jersey, Inc. (ADNJ). It appears that, during the ensuing due diligence period, ADNJ learned that the plaintiff's marital residence was located on the property, and Joanne had refused to consent to the sale. Consequently, the sale of the property was not consummated.

On October 7, 2004, plaintiff filed a lawsuit against ADNJ, and sought a judgment permitting him to retain as liquidated damages the $85,000 that ADNJ had deposited pursuant to the sales agreement. Plaintiff alleges that he instituted that lawsuit on the advice of Lushis and another attorney, Joseph T. Nanovic (Nanovic). Daniel J. Baurkot (Baurkot) represented Sklodowsky in that case.

ADNJ filed a counterclaim against plaintiff for fraud and collusion by failing to disclose his marital status and Joanne's interest in the property. ADNJ also filed a third-party complaint against Lushis and THS, in which it alleged that Lushis violated a duty of good faith and THS was vicariously liable for Lushis's actions.

In February 2007, plaintiff discharged Lushis and Baurkot because he "suspected" that they "were not looking out for his best interests." Meanwhile, Lushis and THS filed a motion seeking summary judgment on ADNJ's third-party complaint. Lushis and THS argued that they never made any representations or misrepresentations that induced reliance on the part of ADNJ. The trial court entered an order dated March 10, 2007, granting defendants' motion. In an unpublished opinion, we affirmed the trial court's order. *Sklodowsky v. Am. Developers of N.J.*, No. A–5085–06, 2008 *WL* 2744247 (App.Div. July 16, 2008).

On October 22, 2007, plaintiff filed a complaint against Lushis, THS, Nanovic and Baurkot in the Law Division. In that action, Sklodowsky asserted claims of professional negligence, breach of contract, and breach of fiduciary duty. It is undisputed that the defendants were never served with the complaint. Accordingly, in May 2008, plaintiff's complaint was dismissed pursuant to *Rule* 1:13–7 for lack of prosecution.

On August 13, 2007, Nanovic filed a complaint against plaintiff; plaintiff's company, Iron Pro Erectors, LLC (IPE); and Joanne in the United States District Court for the Eastern District of Pennsylvania. Nanovic alleged, among other things, that the defendants in that case failed to pay him for his services. Plaintiff in turn filed a counterclaim against Nanovic and a third-party complaint against Lushis, THS and Baurkot, asserting claims of professional negligence.

Thereafter, Lushis and THS filed a motion to dismiss plaintiff's third-party complaint without prejudice on the ground that their joinder in the action was not permitted by *Fed.R.Civ.P.* 14(a) and the claims against them were barred by the Pennsylvania statute of limitations. Plaintiff did not oppose the motion. The federal district court entered an order dated May 22, 2009, granting the motion. In its order, the court noted that dismissal was required because Lushis and THS had been improperly joined in the action. The court expressed no opinion on whether the statute of limitations had run on plaintiff's claims against defendants.

On November 4, 2009, plaintiff commenced this lawsuit against defendants. In his complaint, plaintiff alleged that defendants erroneously advised him to enter into the sales agreement with ADNJ despite the requirements of *N.J.S.A.* 3B:28–3, which states that a married individual is entitled during his or her life to joint possession of any real property occupied as the principal marital residence.

Plaintiff also alleged that defendants engaged in the practice of law in New Jersey without a license; erroneously advised him to

commence a lawsuit against ADNJ; failed to mitigate their prior negligent advice; and billed him for unnecessary legal fees.

On January 18, 2010, defendants filed a motion to dismiss the complaint with prejudice on the ground that plaintiff's claims were barred by the entire controversy doctrine and the two-year Pennsylvania statute of limitations for legal malpractice claims. The trial court considered the motion on March 19, 2010, and on that date, filed a memorandum of decision in which it found that New Jersey's six-year statute of limitations applied and plaintiff's claims were not time-barred. The court concluded, however, that plaintiff's claims were barred by the entire controversy doctrine because plaintiff failed to assert the claims against defendants in the action that he had commenced against ADNJ. The court accordingly entered an order dated March 19, 2010, dismissing plaintiff's complaint with prejudice.

On appeal, plaintiff argues that the trial court erred by applying the entire controversy doctrine to his claims against defendants.

■ *Rule* 4:30A states that the failure to join "claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." The doctrine requires the joinder of "all causes, claims, and defenses related to a controversy." *Cogdell v. Hosp. Ctr.*, 116 *N.J.* 7, 16, 560 *A.*2d 1169 (1989). Previously, the doctrine also had required the joinder of all parties with a material interest in the controversy. *Id.* at 26, 560 *A.*2d 1169.

In *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 *N.J.* 280, 289, 662 *A.*2d 509 (1995), the Court held that the entire controversy doctrine required a litigant to bring a legal malpractice claim against his or her attorney in the underlying action that gave rise to the claim, even though the attorney was representing the litigant in that lawsuit. However, in *Olds v. Donnelly*, 150 *N.J.* 424, 696 *A.*2d 633 (1997), the Court reconsidered its decision in *Circle Chevrolet*, and stated that application of the entire

controversy doctrine to legal malpractice claims had not fulfilled its expectations. *Id.* at 440, 696 *A*.2d 633.

In *Olds,* the Court concluded that the "risk of the disclosure of privileged information and the generally adverse effects on attorney-client relationships outweigh any benefit from requiring a client to assert a malpractice claim in the pending lawsuit." *Id.* at 441, 696 *A*.2d 633. The Court held that the doctrine "no longer compels the assertion of a legal-malpractice claim in an underlying action that gives rise to the claim." *Id.* at 443, 696 *A*.2d 633.

We note that the court rules pertaining to the entire controversy doctrine were amended in 1998 to eliminate mandatory joinder of parties. Pressler & Verniero, *Current N.J. Court Rules,* comment to *R.* 4:30A (2011). *Rule* 4:5–1(b)(2) presently requires that notice of a pending action be given to persons whose participation in the action is required for a just adjudication, as provided in *Rule* 4:28–1(a), or to persons who may be subject to an order entered pursuant to *Rule* 4:29–1(b) compelling their joinder in an action because of potential liability arising from the same transactional facts.

In this case, the trial court found that the entire controversy doctrine could be applied to plaintiff's legal malpractice claims because defendants had been parties to the plaintiff's action against ADNJ. The court stated that *Olds* did not apply because that case dealt with joinder of parties, not joinder of claims. The court also determined that allowing plaintiff's claims against defendants to go forward would be inconsistent with the purposes of the entire controversy doctrine.

In our view, the court erred by concluding that the entire controversy doctrine applied here. Although plaintiff's claims against defendants were germane to plaintiff's lawsuit against ADNJ, and defendants were parties to that action, we are satisfied that the doctrine did not require plaintiff to assert his claims against defendants in that case.

In *Olds*, the Court explained why the entire controversy doctrine should not require a party to join his or her attorney in a lawsuit for the purpose of asserting a legal malpractice claim arising from that action. The Court stated that application of the doctrine in that context

> can chill attorney-client relations. The attorney, formerly the client's advocate, is made the adversary. The client is forced to expend time and money to engage a second attorney to pursue the attorney-malpractice claim. Because the first attorney is now a potential witness, that attorney's own interests are no longer aligned with those of the client. Although we do not suggest that potentially negligent attorneys would misrepresent facts, an attorney charged with malpractice, like any other litigant, would have an incentive to testify guardedly when sued by a former client.
>
> Thus, clients are put in the untenable position of either pursuing a claim against their attorney, whose negligence may never result in an unfavorable outcome, or forever forgoing a legal-malpractice action. Clients who are satisfied with their attorneys and want to maintain an otherwise satisfactory relationship may forgo the right to sue. That result does not provide the fairness that the entire controversy doctrine is designed to encourage.
>
> [*Olds, supra*, 150 *N.J.* at 440–41, 696 *A.*2d 633.]

In our view, these same concerns arise where, as here, the client's attorney is already a party in an action that arose from the attorney's alleged negligent legal advice. Applying the entire controversy doctrine in such a case also can chill a client's relations with his or her attorney and cause the client's and the attorney's interests to diverge, potentially prejudicing them both. Therefore, we are convinced that the entire controversy doctrine did not require plaintiff to assert his legal malpractice claims in his action against ADNJ.

■  Moreover, even if the entire controversy doctrine could be applied in this context, we do not believe that it would be equitable to do so. The purpose of the doctrine is to prevent piecemeal decisions, promote fairness to the parties, and advance the goal of judicial efficiency. *DiTrolio v. Antiles*, 142 *N.J.* 253, 267, 662 *A.*2d 494 (1995).

We recognize that allowing plaintiff's claims to proceed will result in the adjudication of the disputes that arose from Lushis's alleged negligent legal advice in different cases. We also recog-

nize that, if plaintiff's claims had been brought in his lawsuit against ADNJ, fewer judicial resources would be expended in resolving the disputes.

■ Even so, the critical factor in determining whether to apply the entire controversy doctrine is "judicial fairness." *Id.* at 272, 662 *A.*2d 494. We are convinced that it would be unfair to apply the doctrine here. Requiring plaintiff to assert his legal malpractice claim against defendants in the earlier case would have resulted in a divergence of their respective interests in that lawsuit.

Furthermore, although Lushis was not acting as plaintiff's attorney in the ADNJ case, he and his firm had a continuing professional relationship with plaintiff. If plaintiff had been required to assert his claims against defendants in the ADNJ case, that would have further compromised an already strained attorney-client relationship.

In its opinion in this case, the trial court stated that it was not fair to require defendants to defend plaintiff's legal malpractice claims because the underlying real estate transaction occurred about seven years before this action was commenced. However, defendants have not shown that the passage of time has prejudiced their ability to defend the claims.

The trial court also stated that plaintiff had previously filed two identical actions against defendants. As we have noted, one of those actions was dismissed for failure to prosecute and the other was dismissed on procedural grounds. The trial court wrote that plaintiff's decision not to "aggressively pursue his claims against defendants require[d] a finding that fairness precludes this fourth suit on the same facts."

■ However, the two dismissed lawsuits are not relevant to whether the entire controversy doctrine should be applied in this case. The doctrine does not bar a successive action when an earlier lawsuit involving the same parties and claims has been dismissed without prejudice. *Woodward–Clyde v. Chem. and*

*Pollution Sciences, Inc.,* 105 *N.J.* 464, 473–75, 523 *A.*2d 131 (1987); *see also Arena v. Borough of Jamesburg,* 309 *N.J.Super.* 106, 110, 706 *A.*2d 790 (App.Div.1998) (holding that the entire controversy doctrine does not bar a subsequent action against a defendant if a prior lawsuit was dismissed without prejudice before the defendant filed an answering pleading).

Furthermore, although it appears that plaintiff considered filing his legal malpractice claims against defendants in the lawsuit against ADNJ, Lushis and Nanovic allegedly advised him not to do so. According to plaintiff, Lushis and Nanovic told him that they should maintain "a united front" in litigating the dispute with ADNJ. We are convinced that it would be unfair to bar plaintiff from pursuing his claims in this case under such circumstances.

Therefore, we reverse the order dismissing plaintiff's complaint and remand the matter to the trial court for further proceedings.

We add the following. As we noted previously, in its opinion, the trial court found that New Jersey's six-year statute of limitations applied to plaintiff's claims, rather than Pennsylvania's two-year statute of limitations for legal malpractice claims. The court determined that plaintiff's claims are not time-barred. Defendants have not argued that the court erred by finding that plaintiff's claims were timely filed. An issue not briefed on appeal is deemed waived. *Jefferson Loan Co. v. Session,* 397 *N.J.Super.* 520, 525 n. 4, 938 *A.*2d 169 (App.Div.2008); *Zavodnick v. Leven,* 340 *N.J.Super.* 94, 103, 773 *A.*2d 1170 (App.Div.2001).

Reversed and remanded for further proceedings in conformity with this opinion. We do not retain jurisdiction.