# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4466-17T3

J.A.M.,

    Plaintiff-Respondent,

v.

M.L.S.,

    Defendant-Appellant.

_____

        Submitted May 15, 2019 – Decided June 14, 2019

        Before Judges Nugent and Reisner.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FV-07-2336-18.

        Gray Law Group, LLC, attorneys for appellant (David E. Gray, on the brief).

        Seton Hall Law School Center for Social Justice, Family Law Clinic, attorneys for respondent (Jessica Miles, on the brief).

PER CURIAM

In this case arising under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, defendant appeals from a May 1, 2018 final restraining order (FRO) in favor of plaintiff. After an eight-day testimonial hearing, the trial judge issued a lengthy oral opinion, finding that defendant committed the predicate acts of terroristic threats and cyber-harassment against plaintiff and determining that a FRO was necessary for plaintiff's protection against future acts of domestic violence (DV). Those findings were also reflected in the FRO.[1]

Defendant's brief does not address the trial court's finding that his conduct constituted the making of terroristic threats, N.J.S.A. 2C:12-3.[2] Plaintiff contends that we need not address defendant's arguments concerning cyber-harassment, because the finding of terroristic threats was sufficient to justify the FRO. We agree that, in failing to address the finding of terroristic threats in his brief, defendant has waived any issue concerning that aspect of the judge's

---

[1] Page four of the FRO states that the court "sustain[ed]" the charges of "cyber-harassment" and "terroristic threats." Although the judge's opinion includes references to harassment, the FRO itself does not include a finding of harassment under N.J.S.A. 2C:33-4, and does not premise the restraints on the predicate offense of harassment.

[2] In relevant part, the statute makes it a crime to threaten "to commit any crime of violence with the purpose to terrorize another." N.J.S.A. 2C:12-3(a).

A-4466-17T3

decision.  See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div.

2011).[3]  We also agree with plaintiff that a finding that defendant committed

terroristic threats, by itself, is sufficient to satisfy the predicate act requirement

of the PDVA.  See N.J.S.A. 2C:25-19(a)(3), (a)(19) (defining terroristic threats

and cyber-harassment as predicate acts).  Nonetheless, we will address the

findings concerning cyber-harassment.

By way of background, the cyber-harassment statute provides, in pertinent

part:

> A person commits the crime of cyber-harassment if,
> while making a communication in an online capacity
> via any electronic device or through a social
> networking site and with the purpose to harass another,
> the person:
>
> (1)   threatens to inflict injury or physical harm to any
> person or the property of any person; [or]
>
> (2) knowingly sends, posts, comments, requests,
> suggests, or proposes any lewd, indecent, or obscene
> material to or about a person with the intent to
> emotionally harm a reasonable person or place a
> reasonable person in fear of physical or emotional harm
> to his person….

---

[3]  In his decision, the judge noted he had allowed plaintiff to amend the DV complaint to include terroristic threats and had protected defendant's due process rights by giving him adjournments and other accommodations so that he could respond to that charge.  Defendant's brief does not challenge the amendment.

[N.J.S.A. 2C:33-4.1(a)(1), (2).]

To put the appeal in context, the parties were teenage classmates at a local high school. In the trial court, the parties stipulated that they had a dating relationship. In late September, defendant sent four of his friends a vulgar Snapchat message which they believed was about plaintiff. The message spawned rumors in the school that were embarrassing to plaintiff. Other students, who believed defendant acted improperly, "keyed" defendant's car and threatened to beat him up. Following a heated meeting between his family and plaintiff's family, defendant went to the school authorities, admitted that his Snapchat message was inappropriate, and accepted a disciplinary suspension.

After serving the suspension, defendant continued his education through home instruction. He remained enrolled in the school but did not attend classes there. Plaintiff continued to attend the school. Defendant stopped sending plaintiff Snapchats or otherwise directly communicating with her. However, he posted a series of angry messages on the internet about how plaintiff and her family and friends had ruined his life. Three of those messages could fairly be construed as veiled threats to commit violence. One message stated, "I'm going to hell. Who's coming with me." A second referred to "spiteful bitch and rifle

4

clips," and a third referred to "saving money now for the lawyers I'll need later."

In January, defendant posted a hostile internet message about his "ex" girlfriend.

In February, about five months after defendant sent the initial vulgar Snapchat, and a couple of weeks after a nationally-publicized school shooting in Parkland, Florida, defendant made three internet postings which became the focus of the DV charges in this case. On the day of the postings, the high school was holding an all-day music program and fund-raiser. Defendant's first post stated that he would "give you all a little extra to hate me for today." Next, defendant posted on Snapchat an announcement that he had uploaded a rap song on a public music website. The Snapchat message included a link to the music website and the song. It is fairly inferable from the record that defendant knew current students at the high school were among his Snapchat followers and hence would see the message and circulate it.

Defendant's page on the music website featured a photo of defendant holding a handgun and pointing it at the viewer. The rap song itself contained the name of the high school; the title included the words "lil sluts at [the high school]." In the song, defendant threatened to hit a "bitch" in the face, crack a girl's head like an eggshell, and kill her. The lyrics included the words: "You fucked up my life. Put a knife in my lungs. I don't give a fuck about a bitch.

 A-4466-17T3

Pull my gun, put it to your fucking head, now you're dead." Later that day, plaintiff heard the song, believed it was directed at her, perceived it as a threat, and was frightened. School officials, also perceiving that the song threatened violence, put the school on lockdown and canceled the rest of the day's music events.

After hearing defendant and plaintiff testify, the trial judge found that plaintiff was a credible witness and defendant was not credible. Specifically, the judge did not believe defendant's benign explanation for the song lyrics or for his course of conduct in publicizing it to his former high school classmates and posting it on the music website. The judge specifically disbelieved defendant's explanation for including a photo of himself holding a gun. The judge found as fact that defendant intended the lyrics as threats aimed at plaintiff and that he posted the song with the intent to harass her.

In making those findings, the judge followed what he called the "roadmap" defendant created, referring to defendant's conduct in the weeks leading up to the posting of the song. The judge rejected defendant's explanation that the timing of the posting was a mere coincidence. The judge found that "the language, and the context, the surrounding circumstances and [defendant's] prior statements, all lea[d] this [c]ourt to conclude that this is a communication in

A-4466-17T3

offensively coarse language[, issued] [w]ith a specific purpose to harass the person that continually caused [defendant's] upsetness, the plight he found himself in. . . . And that is unfortunately the plaintiff. . . ." The judge noted that defendant had issued an earlier statement about giving something to hate him for, as an "advertisement" for the coming rap song. The judge found that the manner in which the song was communicated was "designed and intended to disturb, irritate or bother" plaintiff and it in fact had that effect on her.

The judge also concluded that defendant's course of conduct constituted cyber-harassment under N.J.S.A. 2C:33-4.1. The judge found that defendant threatened to inflict physical harm on plaintiff, as well as posting obscene and lewd messages about her, and that a reasonable person subjected to all of that communication would be fearful.

Lastly, the judge found that defendant committed terroristic threats under N.J.S.A. 2C:12-3(a), threatening to commit a crime of violence with the purpose to terrorize another. The judge found that the threat to "[p]ull my gun and put it to your fucking head" was a threat, supported by a picture of defendant holding a gun and pointing it outward at the viewer. The judge concluded that the line was a "threat to commit a crime of violence with a purpose to terrorize [plaintiff]."

A-4466-17T3

The judge then reviewed the <u>Silver</u>[4] factors concerning the need to issue a FRO, finding that defendant not only committed predicate acts of DV, but that defendant had no appreciation of how wrongful his conduct was. Based on defendant's history of stewing in resentment at plaintiff, and his lack of remorse or insight into his conduct, the judge found there was a reasonable basis for concern over plaintiff's safety and well-being. The judge found defendant's conduct also stemmed from his unwillingness to let go of a relationship that was over, a situation likely to give rise to future domestic violence. Given defendant's expressed lack of understanding of the wrongfulness of his conduct, the judge found there was "an immediate need to protect the plaintiff from further abuse."

On this appeal, defendant contends that his publication of the song was constitutionally protected speech and was not a predicate act of DV, and the trial court erred in finding that there was a need to issue the FRO. Based on our review of the entire record, we find no merit in any of those arguments. They are largely based on defendant's version of the facts, which the judge did not credit. Defendant's constitutional argument, which discusses harassment but not cyber-harassment, is misplaced because the FRO was not issued based on a

---

[4] <u>Silver v. Silver</u>, 387 N.J. Super. 112, 126-28 (App. Div. 2006).

finding of harassment. See State v. Burkert, 231 N.J. 257, 274 (2017) (contrasting the "loosely worded language" of the harassment statute, N.J.S.A. 2C:33-4(c), with the more "precise and exacting standard" contained in the cyber-harassment statute, N.J.S.A. 2C:33-4.1). Except as addressed below, defendant's contentions do not warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

On this appeal, our review of the judge's decision is limited. We will not disturb the judge's factual findings as long as they are based on substantial credible evidence, and we owe great deference to the judge's evaluation of witness credibility. Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). We also owe deference to the expertise of the Family Part. Id. at 413. We will not "disturb the 'factual findings and legal conclusions of the trial judge unless . . . they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

This case does not concern rap music in general, or defendant's song lyrics in the abstract. Rather, the case concerns the totality of defendant's conduct, viewed in light of the trial judge's factual findings. We bear in mind that the

trial judge listened at length to the testimony of these parties and their witnesses and had the opportunity – which we have not – to judge their credibility firsthand. Id. at 411-12. Defendant testified, giving his explanation for his conduct. The judge did not believe him. Instead, he believed the testimony of plaintiff and her witnesses. After reviewing the trial record, we find no basis to second-guess the judge's credibility findings, or his findings of fact.

In light of the facts as the judge found them to be, we find no merit in any of defendant's appellate contentions. And, as previously noted, even without the finding of cyber-harassment, the judge's finding of terroristic threats, which defendant has not challenged, is a sufficient predicate act under the PDVA. N.J.S.A. 2C:25-19(a)(3). The record supports the judge's factual and legal determinations on terroristic threats. The judge's findings as to the remaining Silver factors, justifying the issuance of the FRO, are also supported by substantial credible evidence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4466-17T3