**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4256-17T4

IN RE THE ESTATE OF
RALPH A. GALLEGAN,
Deceased.

_____

Submitted March 6, 2019 – Decided June 26, 2019

Before Judges Fuentes and Moynihan.

On appeal from the Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. 199831.

William J. Gearty, attorney for appellant Thomas Gallegan.

Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, attorneys for respondent The Estate of Ralph A. Gallegan (Jay Holub, on the brief).

PER CURIAM

Ralph A. Gallegan[1] died testate in Delaware, leaving his estate to seven of his nine children, including Donna and appellant Thomas; he excluded two sons, including William. At the time of his death, Ralph owned real property in New Jersey commonly known as 24 Cornell Road, South Toms River (Cornell Road) and 305 Lillian Lane, Toms River (Lillian Lane). He solely owned Cornell Road. On June 23, 2006 he deeded Lillian Lane to himself and Donna as joint tenants with right of survivorship.

In response to a verified complaint filed in the Chancery Division by the administrator of Ralph's estate for instructions as to Cornell Road and burial plots located in New Jersey,[2] Thomas filed a counterclaim alleging in count one that Donna, upon the June 2006 conveyance of Lillian Lane, executed a mortgage to Ralph and "the agreement[] between those parties provided that from the net payments due on her mortgage obligation, there would be an annual distribution from Donna . . . to each of [Ralph's] children to coincide with the commencement of the Christmas shopping season." Thomas demanded

___

[1] We use the given names of the Gallegan clan, including those who now have different surnames, to avoid confusion. We mean no disrespect or familiarity by our practice.

[2] That complaint was resolved by way of consent order and is not the subject of this appeal.

A-4256-17T4

production of the mortgage and documents relating thereto, an accounting of monies due him and sale of the property with the proceeds applied to satisfy his counterclaim. He also demanded in count three, among other relief, that the court instruct the administrator to withhold distribution of estate assets until the counterclaim was satisfied.[3]

Thomas appeals from the trial court's orders: granting respondent Ralph's estate's summary judgment motion and dismissing Thomas's counterclaim; denying his motion to reconsider that order; and awarding attorneys' fees and costs pursuant to Rule 1:4-8. He argues the trial court erred in granting summary judgment because it failed to employ the proper burden of proof in determining whether a material fact issue existed; evaluated the credibility of witnesses in determining the existence of material facts; and material facts existed which precluded entry of summary judgment.

---

[3] In count two of his counterclaim, Thomas demanded an accounting of rents from his sisters, Anna and Diane, who he alleged were living in Cornell Road without paying rent to Ralph's estate. Thomas did not brief any issue relating to this count. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011); 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd. P'ship, 406 N.J. Super. 242, 272 n.10 (App. Div. 2009) (noting claims that have not been briefed are deemed abandoned on appeal). We therefore will not address the grant of summary judgment as to that count.

We review the grant of summary judgment, under the same Rule 4:46-2(c) standard that governs the trial court. See Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007). Summary judgment must be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). We "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). We review the trial court's decision in these matters de novo, and afford the trial court ruling no special deference. Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016). We agree that the trial court did not consider the proofs through the appropriate lens and reverse.

The trial court ruled, "[m]y findings of fact will adopt and incorporate [the estate's] statement of undisputed material facts . . . that was submitted by [the administrator] as if more fully set forth herein." The court continued, "I find they are both credible and well documented. Therefore I will incorporate those findings of fact." The court's adoption of the administrator's submission did not

A-4256-17T4

analyze Thomas's contentions. The record reveals Thomas submitted a statement of disputed facts that countered many of those submitted by the administrator. It was improper on summary judgment for the trial court to find the administrator's facts credible. The proper analysis called for the court to determine whether the competent evidence, under the light most favorable to Thomas, was sufficient to warrant the submission of the matter to a jury for determination.

We also perceive the record contains disputed facts that preclude entry of summary judgment. The trial court, rightly concluded Thomas's "speculation that a mortgage existed on June 23 . . . , 2006 is not supported by the record" – a fact conceded by Thomas in his merits brief – but then stated that he "has only produced self-serving certifications of his wife and family members stating they had knowledge of the existence of an obligation."

The court conflated the non-existence of a mortgage document with the record evidence that a payment obligation existed. The obligation, in the light most favorable to Thomas, need not have been tied to a mortgage document. Contrary to the estate's contention in its merits brief that the obligation had to be proven, Thomas needed only present competent proof of the obligation in order to defeat summary judgment.

 A-4256-17T4

Donna's contentions are set forth in her deposition testimony that is included in the record. She admitted in depositions that she paid Ralph monthly rent in the amount of $850 after she moved into Lillian Lane in 2002. Subsequent to the June 2006 conveyance, Donna wanted her brother William to live in Lillian Lane; Ralph objected. Donna told Ralph it was her house and she could do with it what she wanted. Ralph responded, "it's not your house until I die." After "a couple of weeks arguing," Donna told Ralph "I'll go and see what the going rate of the houses are around here and I will pay you that because I don't want you to tell me what I could do in my house." She said she "would pay him that so [William] could live there." She "didn't want [William] living on the streets. That's where the amortization table came in. And that's when [she] started paying [Ralph $]1389.83."

Donna deposed that after ascertaining the value of Lillian Road – approximately $175,000 – Donna printed a fifteen-year amortization table, dated February 2007, for that amount; the monthly payment was $1389.83. Donna said that she told Ralph that she was "going to pay [him] that amount and everything was to cease when he died, and that's why it ceased when he died." When asked if that arrangement was ever reduced to writing, Donna said, "No. This was a verbal thing between me and my father." When asked what Ralph's

6

"reaction [was] to the offer," she replied, "He cashed the checks when he felt like it." The estate's "Statement of Undisputed Material Facts" – that was adopted by the trial court – claims "[t]he only debt that would be owed to her father from [Donna] was during his lifetime to supplement his income and it would cease upon his death."

Thomas contends that his father told him the monthly payments would continue after Ralph's death and would be paid annually as alleged in count one of his counterclaim. Thomas certified that Ralph showed him and his siblings "a large list of the dates of the payments and the amount expected to be made by Donna." The record also reveals the administrator sent a letter to Donna asking her the purpose of "an amortization schedule [found in Ralph's residence after his death] that was sent to [Ralph] by [her] on January 6, 2007" that "appear[ed] to be related to a fairly sizeable loan." Donna identified handwriting on the amortization schedule next to the payment listed for March 2007 as Ralph's; he wrote, "FIRST PAYMENT." Next to the February 2007 payment, Ralph wrote: "RENT PAYMENT." Donna said her first payment of $1383.89

was made in March, not February, 2007[4] and that she was paying that amount "predicated on the value of the whole house."

Other evidence in the record includes an exhibit to the administrator's certification submitted in support of the estate's summary judgment motion: copies of four checks – dated February 1, 2007; December 1, 2007; January 1, 2008; and June 1, 2008 – bearing Donna's purported signature, each written to Ralph for $1383.89. "Mortgage Payment" is handwritten in the memo section of the June 1, 2008 check. "Mortgage" is handwritten in the memo section of the February 1, 2007 check. Thomas also submitted other sworn statements from his wife, sister and from Ralph's brother and his wife evidencing that Ralph stated his intention that Donna's payment would continue after his death to the beneficiaries of his last will and testament.[5]

The record supports the disputed claim that Donna agreed to pay $1383.89 beginning in 2007. The absence of a mortgage document does not obviate that

---

[4] The estate's "Statement of Undisputed Material Facts" claims "[t]he first payment of $1,389 was February 2007." A copy of a check for $1383.89, dated February 1, 2007, was attached to the administrator's certification in support of the summary judgment motion; "VOID" was thrice handwritten on the check.

[5] Although Thomas mentions six sworn statements in his merits brief, the record reveals certifications and notarized statements from five, not six, family members: Thomas; his wife, Nancy; his sister, Theresa; Ralph's brother, John, and his wife, Toni.

disputed fact. The agreement was made after the transfer of title so it is of no moment that a mortgage securing the obligation was not made or recorded. It did not arise from the transfer of title but from Donna's reaction to the 2007 dispute about William living at Lillian Road. Donna admitted the agreement was verbal. Two of Donna's checks attached to the administrator's certification denote that they are for "mortgage" payments. That same term was used by John and Toni in their notarized letter to describe the payments Ralph said were to continue after his death. The nomenclature does not require the obligation to be tethered to a mortgage. Although payments under the obligation were labeled mortgage payments, it is a disputed fact that Donna was obligated to make the payments set forth in the amortization schedule. The trial court erred in granting summary judgment because there was no evidence of a mortgage. There was evidence of an obligation.

That obligation was supported by more than "self-serving" certifications, the term used by the trial court to describe the sworn statements Thomas proffered. In Chicago Title Insurance Co. v. Ellis, 409 N.J. Super. 444 (App. Div. 2009), plaintiff – which sought to recoup funds from parents whose daughter had defrauded a bank and given substantial funds to the parents – contended that one parent's affidavit that the funds were actually a loan

repayment was insufficient to defeat summary judgment because there was "no documentary support for the alleged loan and it [was] merely a 'self-serving' declaration." Id. at 463. We rejected that contention and determined, "[w]hether self-serving or not, [the parent's] sworn statement that there was a loan to her daughter is admissible evidence and sufficient to create a disputed issue of fact about whether she gave fair value for the . . . payment, namely discharge of a debt." Ibid.

The same holds true in this case. As Thomas observes in his merits brief, John and Toni were not named in Ralph's will; they had nothing to gain and their notarized letter is not self-serving. Moreover, there was documentary and other support for Donna's obligation; the annotated amortization schedule and checks, as well as Donna's deposition testimony, present sufficient proof of an obligation to preclude summary judgment.

To be sure, the nature and terms of the agreement are uncertain. Why did Donna continue to pay rent after she was added to the deed? If the reason for the increase from $850 to over $1300 was linked to William's residence, why were payments amortized out over fifteen years? And why were they amortized over that period if they were to end when Ralph passed? And were the payments to cease after his death or continue to be paid to Ralph's heirs?

The fact-finder should resolve any issues regarding Donna's alleged obligation. These issues should not have been decided on summary judgment. As such, we reverse the dismissal of count one and the related portion of count three of Thomas's counterclaim.

In light of our determination that summary judgment was improvidently granted, we also reverse the award of attorneys' fees that the trial court ordered Thomas to pay under Rule 1:4-8. Because that award was made against a party, and not the attorney, N.J.S.A. 2A:15-59.1 is implicated. Toll Bros., Inc. v. Twp. of W. Windsor, 190 N.J. 61, 70 (2007) (recognizing that "Rule 1:4-8 'governs the procedure for fee applications both against parties under [N.J.S.A. 2A:15-59.1] and against lawyers under [Rule 1:4-8]'" (alterations in original) (quoting Trocki Plastic Surgery Ctr. v. Bartkowski, 344 N.J. Super. 399, 405 (App. Div. 2001))). We note the trial court made no finding that Thomas acted in bad faith. In Ferolito v. Park Hill Association, 408 N.J. Super. 401, 408 (App. Div. 2009), we determined that when an application is made by a prevailing defendant pursuant to N.J.S.A. 2A:15-59.1(b)(2) "and the plaintiff is represented by an attorney, an award cannot be sustained if the 'plaintiff did not act in bad faith in asserting' or pursuing the claim." Id. at 407-08 (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 549 (1993)). We concluded,

11

a grant of a motion for summary judgment in favor of a defendant, without more, does not support a finding that the plaintiff filed or pursued the claim in bad faith. "[T]he burden of proving that the non-prevailing party acted in bad faith" is on the party who seeks fees and costs pursuant to N.J.S.A. 2A:15-59.1.

[Id. at 408 (alteration in original) (citation omitted) (quoting McKeown-Brand, 132 N.J. at 559).]

If the issue arises again, in determining whether fees are warranted, the trial court should ensure that the moving party complies with the procedures fully limned in Ferolito and Toll Brothers.

We note Thomas did not address the denial of his motion for reconsideration in his merits brief. Though issues not briefed are usually deemed abandoned, Lushis, 417 N.J. Super. at 657, our reversal of the grant of summary judgment renders the appeal of the reconsideration motion moot.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4256-17T4