# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1170-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ASHLEY MALDONADO,

     Defendant-Appellant.

_____

      Argued February 5, 2026 – Decided March 23, 2026

      Before Judges Mawla and Puglisi.

      On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 14-03-0137.

      Kayla E. Rowe, Designated Counsel, argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Kayla E. Rowe, on the briefs).

      Ali Y. Ozbek, Assistant Prosecutor, argued the cause for respondent (Camelia M. Valdes, Passaic County Prosecutor, attorney; Ali Y. Ozbek, of counsel and on the brief).

PER CURIAM

Defendant Ashley Maldonado appeals from a December 13, 2024 order denying her motion to enforce an oral modification of her plea agreement or in the alternative, to withdraw her guilty plea; and a January 29, 2025 amended judgment of conviction.[1] We affirm the denial of her motion to enforce an oral modification of the plea agreement and the amended judgment of conviction. Because the court did not address defendant's motion to withdraw her guilty plea, we reverse and remand for further proceedings.

I.

Defendant was one of seven co-defendants indicted for offenses arising out of a sexual assault that occurred on November 5, 2012. She was charged with: third-degree invasion of privacy – recording a sex act without consent, N.J.S.A. 2C:14-9(b) (count thirty-one); first-degree aggravated sexual assault – force/coercion, N.J.S.A. 2C:14-2(a)(5) (count thirty-three); third-degree aggravated criminal sexual contact, N.J.S.A. 2C:14-3(a) (counts thirty-five, thirty-nine, forty-three, and fifty-three); first-degree aggravated sexual assault – armed with weapon, N.J.S.A. 2C:14-2(a)(4) (count thirty-seven); first-degree

---

[1] Although defendant's notice of appeal also lists the December 13, 2024 order denying her motion for reconsideration, her brief does not address this order. "An issue not briefed on appeal is deemed waived." Woodlands Cmty. Ass'n, Inc. v. Mitchell, 450 N.J. Super. 310, 319 (App. Div. 2017) (quoting Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011)).

A-1170-24

aggravated sexual assault – victim helpless, incapacitated, N.J.S.A. 2C:14-2(a)(7) (count forty-one); first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1) (count forty-five); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count forty-seven); fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count forty-nine); first-degree aggravated sexual assault during a kidnapping, N.J.S.A. 2C:14-2(a)(3) (count fifty-one); second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1) (count fifty-five); and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b) (count fifty-seven). She was also charged with conspiracy to commit these individual offenses, N.J.S.A. 2C:5-2 (counts thirty, thirty-two, thirty-four, thirty-six, thirty-eight, forty, forty-two, forty-four, forty-six, forty-eight, fifty, fifty-two, fifty-four, and fifty-six).

On May 16, 2017, defendant pleaded guilty to count forty-one, first-degree aggravated sexual assault, pursuant to a plea agreement. In exchange for her guilty plea, the State agreed to recommend a five-year sentence in the second-degree range, subject to the No Early Release Act, N.J.S.A. 2C:43-7.2, Parole Supervision for Life (PSL), N.J.S.A. 2C:43-6.4, and Megan's Law, N.J.S.A. 2C:7-1 to -23. The plea form indicated: "Defendant further agrees to cooperate and testify truthfully in trial/hearings of co-defendants." Prior to

accepting the plea, the judge reviewed pertinent sections of the plea form, confirming with defendant she "agree[d] to cooperate with the State and testify truthfully with regard to the trials and/or hearings of the co-defendants in [the] case."

Line number twenty-one of the plea form, which states: "List any other promises or representations that have been made by you, the prosecutor, your defense attorney, or anyone else as a part of this plea of guilty," was left blank. Question number twenty-two asks: "Have any promises other than those mentioned on this form, or any threats, been made in order to cause you to plead guilty?" to which the plea form indicated "No." The judge confirmed with defendant there were no "promises or representations . . . made to [her] by anyone in connection with [the] guilty plea other than what [they] talked about in open court [that day]."

Defendant's sentencing date was adjourned several times while her co-defendants' matters were tried. The first co-defendant's trial ended in a mistrial resulting from a hung jury and was retried. Over the course of the next five years, defendant testified at the trials of three co-defendants, all of which resulted in guilty verdicts.

A-1170-24

Prior to her sentencing, defendant moved to enforce an oral modification to the plea agreement or in the alternative, to withdraw her guilty plea. In support of the motion, defense counsel filed a certification contending "members of the Passaic County Prosecutor's Office (PCPO) made oral representations to [defendant] that she would receive a probationary sentence based on her cooperation and testimony in the prosecution of the co-defendants." Counsel further certified:

> I affirmatively advised defendant that she would receive a probationary sentence. I made this representation to [defendant] after speaking to [Senior] Assistant Prosecutor [in Charge (SAPIC)] Anneris Hernandez when I learned she was leaving PCPO to accept a position in a private law firm. [SAPIC] Hernandez indicated to me that although she was leaving the office she would make certain that [defendant]'s assistance was acknowledged and her cooperation rewarded. [SAPIC] Hernandez never used the word probation[,] but the inference of no jail time was clear from our conversation. Subsequent to my conversation with [SAPIC] Hernandez I advised Assistant Prosecutor [(AP)] Melissa Simsen when she was assigned [defendant]'s case that she should contact [SAPIC] Hernandez in regards to the representations made to [defendant].

In response, the State submitted written memoranda from various PCPO staff members. PCPO victim advocate Janett Rubianes-Lopez stated:

> I have a vague recollection of speaking with an [AP], in passing, who said that . . . defendant . . . would be

5

A-1170-24

getting probation. I have searched the [victim witness] physical file, and the notes in Infoshare for any documented notes about this conversation; however, there are none in either location that reflect either this brief mention of a probation resolution by the AP, or any conversations discussing [defendant] receiving this resolution with the victim . . . .

PCPO Detective Cynthia Henriquez recounted she was in a trial preparation meeting with SAPIC Hernandez and defendant on May 27, 2022. She recalled Hernandez "mentioned something about probation for [defendant] provid[ed] the victim[] . . . agreed." Detective Henriquez remembered details of the meeting, including the weather, and further stated:

> It should be noted that since the departure of SAPIC Hernandez, I was asked several times by PCPO legal staff if I remembered the offer presented to [defendant] by SAPIC Hernandez and my answer has always been consistent in the fact that I do recall SAPIC Hernandez offering [defendant] something involving probation. I recall this information as [defendant] was pregnant at the time and they spoke about her being pregnant and/or having her baby while in prison.

PCPO Lieutenant Anthony M. Aceste generated three memoranda memorializing conversations he had with former senior staff members involved in defendant's case: former Chief Assistant Prosecutor (CAP) Lisa Squitieri, who handled the case just prior to her retirement in 2017; former Executive First

6

A-1170-24

Assistant Prosecutor (EFAP) Gina Pfund, who inherited the case from Squitieri; and SAPIC Hernandez.

CAP Squitieri executed the plea agreement with defendant. She told Aceste "her agreement" was five years, and she never said anything to defense counsel about probation. She also confirmed the agreement was for defendant to testify at one trial because it was important for one particular co-defendant's case, but the remainder of the co-defendants could have been tried without defendant's testimony. Squitieri said defendant "did very well, and it was important [defendant testify at trial] because the victim did not remember anything."

CAP Squitieri further recalled that after she retired, she had phone conversations with EFAP Pfund, who was handling the case at that time. During their discussions about trial strategy, Pfund told her defendant "was being difficult and was reluctant to testify at the second trial." Squitieri told Pfund to "make it worth her while," meaning they should offer defendant probation to secure her testimony. Pfund told Squitieri "she intended to recommend a probationary sentence for [defendant]," which had already been approved by the county prosecutor.

A-1170-24

CAP Squitieri stated she attended trial as an observer in 2019 and encountered defendant in the hallway. Defendant told her "the prosecutors had promised her probation, but it was not in writing and . . . she was nervous she would not receive that sentence." She "assured [defendant] that if they promised probation that she would receive [it] and encouraged her to focus on testifying."

EFAP Pfund told Lieutenant Aceste defendant "did very well for her during trial," but she did not discuss any additional agreement "outside the four corners" of the plea agreement. She "never promised" defense counsel or defendant "anything beyond the agreement" and "would be shocked if [defense counsel] said" otherwise. Pfund also said "she never had a conversation with . . . [CAP Squitieri] seeking anything lower" than the five-year term.

SAPIC Hernandez stated she did not believe any other prosecutors "promised [defendant] probation," and she did not mention probation to defense counsel or defendant. Hernandez never heard EFAP Pfund mention anything about probation, but said "the issue of 'what would happen to [defendant]' was always a question." She also agreed defendant was "instrumental" in securing a guilty verdict because the video of the incident "was not self-explanatory."

The State also produced an August 9, 2023 text message from SAPIC Hernandez to AP Simsen that said:

8

G[ood ]m[orning]!  Hope you are well.  [Defendant] was instrumental in securing guilty verdicts for THREE of the assailants who sexually assaulted [the victim]. Two of the three are serving a lengthy prison sentence and the third is a dangerous fugitive, which I am sure PCPO is expending resources to find for the numerous crimes he was convicted for last June.

Before I inherited the case and before I tried the two lengthy trials, . . . [CAP] Squitieri had entered into an agreement with defense [counsel] to give [defendant] a sentence that would NOT include prison time if she cooperated with the [S]tate.  [Defendant] cooperated with the State extensively and was essential in securing very important convictions in this matter.

I hope the State does the right thing.  Please reach out to me if you need more information.

Have a great day.

On February 6, 2024, the first motion judge considered argument on the motion and decided it merited a testimonial hearing because the written record was insufficient "to make a reasonable determination."  She needed "a better understanding of the situation before [she could] properly rule out of fairness to both parties."  The judge set a testimonial hearing date and ordered the parties to exchange witness lists and exhibits.  On April 17, 2024, the judge entered an order recusing herself from further proceedings because "the State ha[d] identified [her] as a potential witness."  The matter was then transferred to another judge.

9

On June 11, 2024, the second judge conferenced the matter with counsel and then confirmed on the record his "sentencing intentions, which [we]re to sentence per the written plea agreement." Notwithstanding the judge's pronouncement, defendant subsequently filed a certification in further support of her motion, describing a conversation she had with CAP Squitieri the day of the plea agreement as follows:

> During that conversation, I understood that my plea deal was for [five] years with [eighty-five percent] in State prison but was also told that the offer could be amended to probation later, depending on how things went with my testimony and cooperation at the co-defendants' trial.

> I asked [CAP] Squitieri why it could not be written on paper that I might receive probation, because I was worried about my future, she stated to me I wouldn't seem like a credible witness and that the jury could think that I was testifying to anything just so I would not go to prison.

> I understood that I would have to go to meetings with the prosecutor and testify at trial but I did not know that I was going to have to testify at more than one trial.

> If I had known I was going to have to testify multiple times, I may not have agreed to that much time and may have negotiated a different plea agreement.

> During my preparation for the subsequent, unanticipated trials, I was told that I would get probation due to my cooperation but that I still had to testify that I was going to go to prison for [five] years

10

because I would not be believable if I said I was getting probation.

[(numbering omitted).]

The judge denied defendant's motion to enforce the purported oral modification to the plea agreement. He found only two of the PCPO staff members supported defendant's claim of a revised plea agreement for a probation sentence: Detective Henriquez's recollection that SAPIC Hernandez "mentioned something about probation," which she believed to be an offer of probation; and CAP Squitieri's conversations with EFAP Pfund about a probation deal being approved by the county prosecutor, and Squitieri's subsequent conversation with defendant. The judge also noted Hernandez told the prior judge "she left a long email in the file when she retired without saying anything about its contents; it suggests that it would support the claim of a side deal for probation." However, the State could not locate the email.

After noting plea agreements are governed by principles of contract law, the judge found:

> A modification of this particular form of contract[] would require the transmittal of a clear offer, in writing[,] and a clear acceptance of same, in writing. The consideration is the reduced exposure in exchange for testimony. A modification here would have required some elaborate legal gymnastics to make a guilty plea on first[-]degree [a]ggravated [s]exual

11

[a]ssault into a [thi]rd[-]degree (or <u>possibly</u> second[-]degree) offense, for [p]robation to be considered. The situation here does not come close to supporting the notion that, while there may have been some contradictory backroom talk by an AP or retired AP, there was an effective modification of the agreement before defendant's testimony in any of the three trials.

The notion that a promise allegedly made by [SAPIC] Hernandez (who was an observer) to a defense attorney at the conclusion of the third and last trial in these matters to "make certain that [defendant's] assistance was acknowledged and her cooperation rewarded" could qualify as a valid modification of the formal plea agreement is frankly, absurd.

. . . [D]efendant had her reward baked into the process from the outset: she pleaded "[g]uilty" to a first-degree offense wherein she had exposure of [ten to twenty] years in prison in exchange for sentencing at the bottom of the second-degree range, [five] years, conditioned based upon her providing truthful testimony and cooperation. She did her job, so she is entitled now to receive the benefit of that plea bargain agreement.

[(eleventh alteration in original).]

Although the motion to withdraw her guilty plea was briefly discussed in court, neither the judge's opinion nor the confirming order addressed this relief.

After defendant's unsuccessful motion for reconsideration, she was sentenced on December 11, 2024. Pursuant to N.J.S.A. 2C:44-1(a), the judge found aggravating factor nine ("[t]he need for deterring the defendant and others

from violating the law"). Pursuant to N.J.S.A. 2C:44-1(b), the judge found mitigating factors seven ("[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present offense"); eight ("[t]he defendant's conduct was the result of circumstances unlikely to recur"); nine ("[t]he character and attitude of the defendant indicate that the defendant is unlikely to commit another offense"); twelve ("[t]he willingness of the defendant to cooperate with law enforcement authorities"); and fourteen ("[t]he defendant was under [twenty-six] years of age at the time of the commission of the offense"). The judge determined "the mitigating factors preponderate[d] the aggravating factor," and sentenced defendant to five years in prison in accordance with the plea agreement.

Defendant raises the following issues on appeal:

POINT I

THE TRIAL COURT SHOULD HAVE ENFORCED [THE] PCPO'S VERBAL REPRESENTATIONS OF PROBATION THAT INDUCED [DEFENDANT]'S CONTINUED COOPERATION AND TESTIMONY ACROSS MULTIPLE TRIALS.

A. The spoken agreement between [the] PCPO and [defendant] constitutes an enforceable express contract.

13

B.  Even if the written plea agreement was a fully integrated contract, the subsequent prosecutor's offer of probation in exchange for [defendant]'s testimony at the subsequent trials constitutes an express modified plea agreement.

C.  [Defendant]'s specific performance enforcing an implied contract and sentencing her to probation.

POINT II

IN THE ALTERNATIVE, THE COURT ABUSED ITS DISCRETION IN DENYING [DEFENDANT]'S MOTION TO RETRACT HER GUILTY PLEA, AND SHE SHOULD BE ALLOWED TO DO SO.

A. The sentencing court erred in denying [defendant]'s motion to retract her guilty plea.

B. This [c]ourt should rescind the prior plea agreement, on the basis of its illegality.

POINT III

IN THE ALTERNATIVE TO GRANTING RELIEF NOW, AN EVIDENTIARY HEARING SHOULD BE HELD, BECAUSE THE SENTENCING JUDGE ERRED IN REVERSING THE DECISION OF HIS CO-EQUAL SISTER JUDGE WHEN HE REFUSED TO HOLD THE PREVIOUSLY ORDERED EVIDENTIARY HEARING.

A. The original order for a hearing must be honored.

B.  The situation requires an evidentiary hearing, at a minimum.

POINT IV

THE SENTENCING COURT'S ANALYSIS OF THE AGGRAVATING AND MITIGATING FACTORS WAS IMPROPER AND SHOULD BE RECALIBRATED TO RECOGNIZE [DEFENDANT]'S CURRENT PERSONAL CHARACTERISTICS AND CIRCUMSTANCES.

POINT V

THE FACTUAL BASIS DOES NOT SATISFY THE ELEMENTS OF ACCOMPLICE LIABILITY, BECAUSE [DEFENDANT]'S CONDUCT WAS NOT THAT OF AN ACCOMPLICE.

II.

A.

"The plea bargain system is founded on the '"mutuality of advantage" it affords to both the defendant and the State.'" State v. Williams, 277 N.J. Super. 40, 46 (App. Div. 1994) (quoting State v. Taylor, 80 N.J. 353, 361 (1979)). "Defendant obtains the benefit of reduced penal exposure while the State is provided with the certainty of some punishment and the conservation of limited resources." Ibid. "This contractually-based principle necessarily requires that both parties to the bargain voluntarily agree to its term." Ibid. "It requires a meeting of the minds upon the negotiated pleas and is an executory agreement since it depends on the approval of the sentencing court." State v. Smith, 306

N.J. Super. 370, 383 (App. Div. 1997). Because the issue here sounds in contract, we review de novo the judge's determination the parties did not orally modify the plea agreement. Serico v. Rothberg, 234 N.J. 168, 178 (2018).

The undisputed facts establish the following. The day of the plea agreement, defendant had a conversation with CAP Squitieri, wherein they agreed the five-year recommendation could be later amended to probation, depending on how defendant testified during trial. Squitieri confirmed the agreement was for one trial.[2] During the course of preparation for three trials, including a retrial, there were discussions about defendant's receiving a probationary sentence.[3] Based on defense counsel's conversation with SAPIC Hernandez, he advised defendant she would receive a probationary sentence.

Even accepting defendant's further assertions as true, the second motion judge correctly found there was no enforceable oral modification of the plea agreement. After formation, contracting parties "may, by mutual assent, modify

[2] The written plea agreement stated "trial/hearings," indicating a singular trial and plural hearings, but the plea judge stated plural "trials and/or hearings."

[3] The State's recommendation of probation would not bind the sentencing judge to that outcome, and both parties acknowledge probation is not an authorized sentence for first-degree aggravated assault. See N.J.S.A. 2C:43-2(g) (prohibiting a probationary sentence for a defendant convicted of an offense subject to PSL).

16

it." Cnty. of Morris v. Fauver, 153 N.J. 80, 99 (1998). Generally, modifications to a written contract are not required to be made in writing. A "modification can be proved by an explicit agreement to modify, or . . . by the actions and conduct of the parties, so long as the intention to modify is mutual and clear." Ibid.; DeAngelis v. Rose, 320 N.J. Super. 263, 280 (App. Div. 1999).

While a plea agreement is generally governed by contract law, there are additional requirements above those applicable to a contract between private parties. A plea agreement must be "placed on the record in open court" per Rule 3:9-3(b). A judge may only accept a plea after questioning the defendant and determining "there is a factual basis for the plea and that the plea is made voluntarily, not as a result of any threats or of any promises or inducements not disclosed on the record, and with an understanding of the nature of the charge and the consequences of the plea." R. 3:9-2. A judge also has the discretion to reject a plea agreement. Ibid.

The alleged oral modification was neither placed on the record in open court nor was it accepted by the court. If the parties intended the plea agreement to only require defendant's testimony at one trial, this condition was contrary to the agreement's written terms and the parties' representations during the plea hearing. Moreso, the modification of the plea agreement to a recommendation

17

of probation was neither mutual nor clear, as demonstrated by the competing and conflicting statements.  We therefore affirm the judge's denial of defendant's motion to enforce an oral modification of the plea agreement.

We reach a different conclusion regarding defendant's motion to withdraw her guilty plea.  Motions to withdraw a guilty plea filed at or before the time of sentencing will be granted in the "interests of justice," R. 3:9-3(e), in the exercise of the court's discretion, State v. Simon, 161 N.J. 416, 444 (1999).  Before sentencing, courts are to exercise their discretion liberally to allow plea withdrawals.  State v. Smullen, 118 N.J. 408, 416 (1990).  In a close case, the "scales should usually tip in favor of defendant."  Taylor, 80 N.J. at 365.

In deciding a motion to withdraw a guilty plea,

> judges are to consider and balance four factors . . . :  (1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.

[State v. Slater, 198 N.J. 145, 157-58 (2009).]

Although the judge considered the Slater motion to be subsumed by the motion to enforce the oral modification, we conclude this was an oversight because the motions are not decided on the same basis.  We are further

18

convinced a testimonial hearing was necessary to decide the Slater motion. "To see if parties dispute a fact, one need only examine side-by-side the parties' allegations. Determining thereby if facts are in dispute is a matter of law." State v. Carrillo, 469 N.J. Super. 318, 333 (App. Div. 2021).

The parties' submissions reveal a host of disputed facts material to the considerations raised by defendant's motion to withdraw her guilty plea. The PCPO staff members' statements not only contradicted each other, they supported defendant's claims the plea agreement was for her testimony during one trial, after which there were discussions about a recommendation of probation in exchange for her continued testimony. A hearing would enable the court to consider the testimony, decide credibility, and make findings of fact necessary to assess the Slater factors.

### B.

For the sake of completeness, we address defendant's argument the sentencing judge failed to consider mitigating factor four, N.J.S.A. 2C:44-1(b)(4) ("[t]here were substantial grounds tending to excuse or justify the defendant's conduct, though failing to establish a defense"), based on her substance use the night of the offense; and mitigating factor eleven, N.J.S.A. 2C:44-1(b)(11) ("[t]he imprisonment of the defendant would entail excessive

hardship to the defendant or the defendant's dependents"), due to her responsibility as the primary caretaker of her young children. She also argues the sentencing judge failed to give proper weight to mitigating factor twelve, and abused his discretion in finding aggravating factor nine outweighed the mitigating factors.

We review sentencing determinations under a highly deferential standard. State v. Fuentes, 217 N.J. 57, 70 (2014). "Appellate review of a criminal sentence is limited; a reviewing court decides whether there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). We defer to the sentencing court's factual findings and will not "second-guess" them. State v. Case, 220 N.J. 49, 65 (2014). A sentence, therefore, must be affirmed "unless[:] (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors . . . were not based upon competent and credible evidence in the record; or (3) 'the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience.'" Fuentes, 217 N.J. at 70 (second alteration in original) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

20

Having reviewed the record, we are satisfied the judge did not abuse his discretion in considering the aggravating and mitigating factors to arrive at the sentence imposed. He found defendant's intoxication the evening of the sexual assault was insufficient to establish a mitigating factor. He also declined to find mitigating factor eleven because, although defendant's incarceration would "no doubt" cause a hardship, she did not establish an excessive hardship by having young children. After concluding the mitigating factors outweighed the singular aggravating factor and finding the plea agreement to be fair and in the interests of justice, the judge imposed a five-year term, which is the lowest permissible sentence in the second-degree range. See N.J.S.A. 2C:43-6(a)(2). While we affirm the sentence, it should not be construed as our view on the outcome of defendant's motion to withdraw her guilty plea.

C.

Finally, for the first time on appeal, defendant argues the factual basis for her guilty plea does not satisfy the legal requirements for vicarious or accomplice liability. We ordinarily decline to consider issues not properly presented to the trial court unless the jurisdiction of the court is implicated or the matter concerns an issue of great public importance. Nieder v. Royal Indem.

21

Ins. Co., 62 N.J. 229, 234 (1973); see State v. Witt, 223 N.J. 409, 418-19 (2015). Neither circumstance is present in this matter.

Affirmed in part; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

_M.C. Harley_

Clerk of the Appellate Division