**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4982-16T1

TRINITY HALL CORPORATION,

      Plaintiff-Respondent,

v.

TOWNSHIP OF MIDDLETOWN
PLANNING BOARD and
TOWNSHIP OF MIDDLETOWN,

      Defendants-Respondents,

and

LINDA GLOWZENSKI,

      Defendant/Intervenor-
      Appellant.

_____

JOHN AND JOAN CLEARY and
DAVID AND MARILYNN ROBINSON,

      Plaintiffs-Appellants,

v.

TOWNSHIP OF MIDDLETOWN

PLANNING BOARD and
TRINITY HALL CORPORATION,

    Defendants-Respondents.

_____

LINDA GLOWZENSKI,

    Plaintiff-Appellant,

v.

TRINITY HALL CORPORATION
and TOWNSHIP OF MIDDLETOWN
PLANNING BOARD,

    Defendants-Respondents.

_____

> Argued February 13, 2019 – Decided August 13, 2019
>
> Before Judges Fuentes, Accurso and Vernoia.
>
> On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket Nos. L-2571-14, L-1264-15 and L-3421-15.
>
> Ronald S. Gasiorowski argued the cause for appellants Linda Glowzenski, John Cleary, Joan Cleary, David Robinson and Marilynn Robinson (Gasiorowski & Holobinko, attorneys; Ronald S. Gasiorowski, on the briefs).
>
> Paul H. Schneider argued the cause for respondent Trinity Hall Corporation (Giordano, Halleran & Ciesla, PC, attorneys; Paul H. Schneider and Steven W. Ward, on the brief).

A-4982-16T1

James H. Gorman argued the cause for respondent Township of Middletown Planning Board.

Michael L. Collins argued the cause for respondent Township of Middletown (Archer & Greiner, PC, attorneys; Brian M. Nelson and Michael L. Collins, on the brief).

PER CURIAM

In this action in lieu of prerogative writs, objectors Linda Glowzenski, John and Joan Cleary and David and Marilynn Robinson appeal from a final judgment affirming Township of Middletown Planning Board's grant of a preliminary and final major site plan and minor subdivision approval to Trinity Hall Corporation for a private all-girls high school, a conditionally permitted use in the Township's R-90 low density residential zone. We affirm, substantially for the reasons expressed by Judge Kapalko in his comprehensive and well-reasoned opinions of October 24, 2014 and April 18, 2016.

This matter has an exceptionally long and tortured history, most of which is irrelevant to the issues on this appeal. To summarize: Trinity Hall filed a conforming application for conditional use approval of its private high school in September 2013. After six hearings, the Board found the application met the standards for private secondary schools set forth in Section 16-818 of the Township's Planning and Development Regulations. It nevertheless denied

the application, finding it did not meet all the "Guiding Principles and General Provisions" governing the grant of conditional uses found in Section 16-801 of the ordinance. Specifically, and "recogniz[ing] Section 16-801 may not be compliant with the MLUL (Municipal Land Use Law)," it found Sections 16-801(B)(1), (2), (4), (5), and (9) had not been satisfied in

> that: the applicant has failed to prove that the proposed development is suitable; that . . . the proposed development is compatible with the existing neighborhood; that the project will substantially increase traffic and traffic hazards on Chapel Hill Road and its intersections; that the applicant has failed to prove the need for a school; and that the proposal is contrary to the objectives of the Master Plan.

Trinity Hall filed a complaint in lieu of prerogative writs seeking a reversal of the Board's decision and invalidation of Middletown's conditional use ordinance. In the first of several comprehensive opinions in this matter, Judge Kapalko on October 24, 2014, found Section 16-801, as applicable to conditional use approval for private schools, failed, in part, to set forth definite specifications and standards for conditional uses and invalidated several sections of the ordinance,[1] remanding the matter to the Board.

---

[1] Section 16-801 provides:

(continued)

4

Certain uses, activities and structures are necessary to serve the needs and to provide for the convenience of the citizens of the Township at the same time, appreciating the fact that they or any one of them may be or may become inimical to the public health, safety and general welfare of the community if located without due consideration to existing conditions and surroundings, such uses are designated as conditional uses subject to the standards and regulations hereby established. These standards and regulations are intended to provide the Municipal Agency with a guide for reviewing applications for conditional uses as provided for by this Chapter. As a result of the review procedure, the applicant may be required to meet additional standards and regulations imposed by the Municipal Agency during site plan review which are in keeping with and will further the intent of these standards and regulations. Such standards and regulations shall be provided for and maintained as a condition of the establishment and maintenance of any use to which they are a condition of approval. In acting upon an application for conditional use approval, the Municipal Agency shall be guided by the following standards and principles:

A. The use for which an application is being made is specifically listed as a conditional use within the zone where the property is located.

B. The design, arrangement and nature of the particular use is such that the public health, safety and welfare will be protected and that reasonable consideration is afforded to the following:

(continued)

A-4982-16T1

(continued)

1.   The suitability of the particular property which is subject to an application for a conditional use.

2.   The compatibility of the proposed use(s) and/or structure(s) within the existing neighborhood.

3.   The potential effect that the proposed use(s) and/or structure(s) will have upon property values.

4.   The adequacy of the proposed parking and traffic circulation for the use(s) and/or structure(s) and the potential for traffic congestion and/or the creation of undue traffic hazards.

5.   The need for such facility or use(s) to serve the area in which it is to be located.

6.   The adequacy of proposed drainage facilities which will serve the use(s) and/or the structure(s).

7.   The adequacy of plans for screening any adverse aspects of the use(s) and/or structure(s) from adjoining properties.

8.   The adequacy of proposed outdoor lighting.

9.   Compliance with the standards, principles and objectives of the Master Plan.

(continued)

A-4982-16T1

The Board, at its next meeting, took up the matter in executive session. On returning to open session, it adopted a resolution granting the application. Glowzenski challenged the resolution, and Judge Kapalko found the Board's action violated both the MLUL and the Open Public Meetings Act, N.J.S.A.

---

(continued)

> 10.　Compliance with the design standards, general provisions, submission requirements and other appropriate provisions of this Chapter.
>
> 11.　Whether or not the proposed use represents an inherently beneficial use to society or the local community.
>
> C.　All conditional uses shall also be required to obtain site plan approval, unless otherwise specified in this Chapter.
>
> D.　Conditional uses shall adhere to the additional standards specified for the particular use under this Article except where no additional standards are specified herein.
>
> E.　No use specified within this Article shall be considered a conditional use unless it is specifically listed as a conditional use in the zone district regulations.
>
> [Township of Middletown, Planning and Dev. Regulations § 16-801 (2013). Judge Kapalko invalidated the introductory sentence to Section 16-801(B), Sections B(1) through (5), B(9) and B(11).]

10:4-6 to -21. He accordingly vacated the resolution and again remanded the matter to the Board.

On remand, the Board held a public hearing on the application, at which Trinity Hall's engineer testified, and was cross-examined extensively, on drainage issues. The engineer explained the stormwater management plan for the site had originally consisted of two detention basins and five underground recharge basins. In response to technical review letters received from the Board's engineer, Trinity Hall dug seventeen test pits on the property in 2014 and 2015 to identify soil type and ground water level. After analyzing the results, it submitted a groundwater recharge evaluation and revised stormwater management report. Because the test pits revealed hydric soils, which would significantly affect drainage and restrict vertical percolation of groundwater, the applicant's engineering firm concluded groundwater recharge was not a viable option, as the soils do not permit recharge. It thus eliminated all five recharge basins and expanded the size of the two detention basins.

Trinity Hall's engineer testified the proposed detention basins were compliant with the Department of Environmental Protection's Best Management Practices Manual and maintained the required one-foot separation between the bottom of the basin and seasonal high water table. The

Board's engineer agreed, stating, "I believe they've met the stormwater requirements at this point in time."

Objectors' presented the testimony of their own engineer, who criticized the test pit excavations because they were taken in January and not in the period between May and December, which the expert claimed was required by "state standards." He further claimed the one-foot separation to seasonal high water table was not met for the detention basins and questioned whether hydric soils predominated the site and thus whether the applicant's conclusions as to lack of recharge were accurate. Objector's engineer conceded, however, that he had not reviewed the original plans nor conducted any of his own analyses and thus could not give an engineering opinion. When asked by a Board member if that meant he could not say "one way or the other whether or not the drainage is adequate?" he replied, "I don't think anyone can."

After questioning objectors' engineer about the detention basins and the one-foot separation requirement, objectors' counsel asked to recall Trinity Hall's engineer to query him further about that issue. The Board declined adhering to the Board attorney's instructions that unless he were recalled by Trinity Hall, the applicant's engineer could not be questioned further. He further offered that the question was one that should have been put to the

 A-4982-16T1

witness during his extensive cross-examination. Objectors' counsel also requested that the Board's engineer testify after the objectors concluded their case. The Board's attorney noted it was already one o'clock in the morning and the engineer did not wish to testify. The Board thereafter voted four to two to approve the application.

The Board's 2015 Resolution Granting Preliminary/Final Major Site Plan, Conditional Use Approval, Design Exceptions and Minor Subdivision Approval to Trinity Hall provided that all of the definite conditional use standards for secondary schools set forth in the municipal ordinance had been met, and included fifteen conditions of approval, including that all necessary permits be obtained from the DEP. Regarding the adequacy of the drainage facilities, the Resolution provided that all concerns raised by the Board's engineer had been answered to the Board's satisfaction. Further, it stated:

> It is not the Board's function to delve into such technical drainage issues. Firstly, the Board is entitled to rely on the professional seal and signature of the applicant's engineer. Secondly, the Board just does not rely on the applicant's engineer, it also seeks the opinion of the Board Engineer. As noted above, the Planning Board Engineer in his report of May 27, 2015 noted that[:] "The applicant has complied with all engineering comments." Accordingly, the Planning Board is approving the drainage plan as submitted. No changes are required; there is no delegation to the Board engineer.

As to objectors' engineer's testimony, the Resolution noted he spoke at length about soil types, test pits, soil logs, and high water levels, but in the end he could not give the Board a professional opinion on the drainage. Specifically, the Resolution noted:

> [Objectors' engineer] submitted no report. [The engineer] merely presented his concerns and questions, but did not provide any professional opinion that the Board could base a decision on. The Board cannot deny a conforming site plan based on concerns or questions, particularly where a professional engineer has signed and sealed the plans, and where the Board's own engineer has reviewed them and found them to be in compliance.

Objectors amended their pleadings to challenge the approval. Ten days after the trial, Judge Kapalko issued a forty-page cogent and comprehensive opinion on April 18, 2016, addressing every one of objectors' arguments and finding the Board had conducted an adequate hearing on July 1, 2015, and there was sufficient evidence in the record to support its findings as to the stormwater detention system. The judge also found that the Board could rightly rely upon the technical review of its engineering professional. After reviewing the evidence in the record and quoting extensively the testimony adduced at the July 1 hearing, Judge Kapalko concluded "the Board heard more than adequate testimony on the issue of the detention basins. While it is

11

true that the accuracy of this evidence was thoroughly challenged, it is for the Board, not this court, to assign credibility and weight to the conflicting evidence."

Specifically, as to the credibility of the experts, the judge noted objectors' engineer provided no support for his assertion that the soil logs were taken improperly in January instead of in the latter half of the year. Trinity Hall, in contrast, relied on DEP's own regulation at N.J.A.C. 7:9A-5.8(b), which provides specifically that the seasonal high water table is to be determined by way of soil pits or borings dug during January through April.[2]

As for objectors' contention that Trinity Hall's plan for the detention basins did not demonstrate the required one-foot separation between the seasonal high water table and the bottom of the basin, Judge Kapalko noted the debate was over how the lowest level of the basin is determined. Finding that level "subject to interpretation" and a proper subject for expert opinion, the judge found the Board was free to accept the testimony of the applicant's

_____

[2] We could locate no support for objectors' expert's testimony that DEP requires test pit information to be obtained between May and December. DEP regulations appear silent as to the optimal time for measuring the seasonal high water table in connection with stormwater managements systems. N.J.A.C. 7:9A-5.8, however, does provide that the standard for measuring the seasonal high water table when constructing septic systems is during the months of January through April.

12

engineer and its own engineering expert that the separation was adequate in light of objectors' engineer's failure to provide any conclusive evidence that his opinion of what constitutes the bottom of a basin was correct. The judge also noted one of the conditions of the approval was that construction of the improvements, which included the detention basins, was subject to the review and approval of the Planning Board engineer. Judge Kapalko thus noted the "Board Engineer will ultimately be in a position to ascertain that the basins are, in fact, installed" in a manner that meets the required one-foot separation, "irrespective of any alleged technical anomaly or ambiguity in the drawings."

Finally, the judge underscored objectors' expert's inability to offer his own opinion as to the adequacy of the stormwater plan and its affect on the Board's determination. Judge Kapalko wrote:

> Thus, unless the Board was willing to conclude the universe of data presented on this subject, together with the opinions of two experts who opined the data was adequate, was insufficient, it could properly conclude that the remainder of [objectors' engineer's] opinions should be accorded less weight. It could also view the conclusions of [the applicant's engineer] and [the Board's engineer], as to the adequacy of the drainage system proposed, undisputed on the subject of sufficiency. No expert opined otherwise.

Objectors promptly moved for reconsideration. Owing to Judge Kapalko's medical leave and untimely death, the motion was not heard for over

13

a year. The case was finally reassigned to Judge Perri who reviewed the record and issued her own detailed opinion denying the motion.

Objectors appealed Judge Kapalko's October 24, 2014 order invalidating parts of the ordinance; the May 12, 2015 order for remand; the October 23, 2015 order concerning certain privileged documents; the April 26, 2016 final judgment; and Judge Perri's July 7, 2017 orders denying Trinity Hall's motion to schedule oral argument and denying reconsideration. In their brief, however, they address only the October 24, 2014 order, the April 26, 2016 order and (briefly) the July 7, 2017 denial of reconsideration. Thus we consider only their arguments as to the October 24, 2014 order invalidating parts of the ordinance, the final judgment and the denial of their motion for reconsideration, deeming the remainder waived. See Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

As to objectors' arguments with respect to invalidation of aspects of Middletown's conditional use ordinance, and the adequacy of the evidence supporting the final judgment and reconsideration, we consider them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). There is no question but that Judge Kapalko was required to assess the validity of the conditional use ordinance pursuant to which the Board initially denied

Trinity Hall's application, notwithstanding the Board's doubts as its validity. See Jackson Holdings, LLC v. Jackson Twp. Planning Bd., 414 N.J. Super. 342, 345 (App. Div. 2010). Review of the ordinance makes plain the sections Judge Kapalko invalidated suffered the same flaws as the ordinance struck down in Lincoln Heights Association v. Township of Cranford Planning Board, 314 N.J. Super. 366, 387-88 (Law Div. 1998), aff'd o.b., 321 N.J. Super. 355 (App. Div. 1999) (striking down conditional use ordinance with requirements similar to the negative criteria for a use variance for lack of specificity and unlawful arrogation of the powers of the board of adjustment). See also Jackson Holdings, 414 N.J. Super. at 349-50; Cardinal Props. v. Borough of Westwood, 227 N.J. Super. 284, 287 (App. Div. 1988).

Judge Kapalko's conclusion that there was substantial, competent evidence in the record to support the Board's finding that Trinity Hall's stormwater management plan satisfied Middletown's ordinance and DEP's regulations is unassailable. The law is well settled that municipal boards "may choose which witnesses, including expert witnesses, to believe." Bd. of Educ. of Clifton v. Zoning Bd. of Adjustment of Clifton, 409 N.J. Super. 389, 434 (App. Div. 2009). Where that choice is "reasonably made," as here, "such

15

choice is conclusive on appeal." <u>Kramer v. Bd. of Adjustment</u>, 45 N.J. 268, 288 (1965).

Having reviewed the record, we are satisfied that Judge Kapalko conscientiously, and correctly, considered and rejected each of objectors' arguments challenging the approval granted to Trinity Hall. We affirm substantially for the reasons he expressed in his thorough and thoughtful opinions of October 24, 2014 and April 18, 2016.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION