NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0326-15T3
              A-0344-15T3

LINDA TISBY,

     Plaintiff-Appellant,

v.

CAMDEN COUNTY CORRECTIONAL
FACILITY,

     Defendant-Respondent.

_____

LINDA TISBY,

     Plaintiff-Appellant,

v.

CAMDEN COUNTY, CAMDEN COUNTY
DEPARTMENT OF CORRECTIONS and
CAMDEN COUNTY CORRECTIONAL
FACILITY,

     Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **January 18, 2017** |
| **APPELLATE DIVISION** |

Submitted November 17, 2016 — Decided January 18, 2017

Before Judges Lihotz, O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket Nos. L-2530-15 and L-2233-15.

Costello & Mains, L.L.C., attorneys for appellant (Deborah L. Mains, on the brief).

Christopher A. Orlando, Camden County Counsel, attorney for respondents (Howard L. Goldberg, First Assistant County Counsel, on the brief).

The opinion of the court was delivered by

WHIPPLE, J.A.D.

Plaintiff, Linda Tisby, appeals from an August 7, 2015 order dismissing the first of her two complaints with prejudice, and from an August 21, 2015 order dismissing her second complaint with prejudice. We granted plaintiff's motion to consolidate these appeals on January 13, 2016. We affirm both orders.

Plaintiff began working as a corrections officer for defendant, Camden County Correctional Facility (CCCF), in 2002. In 2015, plaintiff reverted to the Sunni Muslim faith.[1] On May 1, 2015, plaintiff reported to work wearing, for the first time, a traditional Muslim khimar, a tight fitting head covering, without a veil.[2] Plaintiff's supervisor informed her she was not in compliance with the uniform policy and could not work unless

---

[1]  In the Sunni faith, a person who comes to the Sunni religion from another religion is said to revert, as opposed to convert.

[2]  Throughout the pleadings, plaintiff refers to the head covering she wears as either a khimar or hijab. We will use the term plaintiff adopted in her brief and refer to the head covering as a khimar.

she removed the khimar.[3] Plaintiff refused to remove her khimar, so she was sent home and disciplinary charges were recommended.

Plaintiff refused to remove her khimar again on May 2, May 3, and May 6, 2015. Plaintiff continued refusing to remove her khimar, stating the khimar was for religious purposes. Each day plaintiff refused, she was sent home and disciplinary action was implemented. As a result of the May 6, 2015 events, plaintiff received a two-day suspension.

In a May 11, 2015 memorandum, the Warden of CCCF advised plaintiff he considered her "position as a request for an accommodation under Title VII of the Civil Rights Act, as well as New Jersey's Law Against Discrimination (LAD)," even though she had not formally submitted such a request. The Warden recognized plaintiff's religious beliefs were sincerely held but rejected her accommodation request because it would "constitute an undue hardship to the Department to allow an officer to wear head-coverings or other non-uniform clothing." He informed

---

[3] Defendant's Uniform Grooming Standards provide the following:

> G. Hats: Only authorized headgear as prescribed by prevailing departmental specifications will be worn. The hat will be worn well balanced on the head, front, back and side. The hat will not be crushed down or altered in any way. Hats will be worn at all times except when indoors or in a vehicle.

plaintiff no disciplinary action would be taken against her if she came to work in only the permitted uniform. Plaintiff declined and continued to wear her khimar. She was removed from her position on May 11, 2015.

Following her removal, plaintiff filed two lawsuits. We address each in turn. The first complaint (Tisby I) was filed on June 12, 2015, against Camden County, Camden County Department of Corrections, and CCCF, seeking damages and equitable relief for defendants' violations of the LAD, N.J.S.A. 10:5-1 to -49, by failing to "accommodate sincere religious beliefs." The complaint alleged defendants permitted other women, including Muslim women and women going through chemotherapy, to wear head coverings at CCCF.

On July 2, 2015, plaintiff filed a verified complaint in lieu of prerogative writ seeking immediate reinstatement of her employment and back pay (Tisby II). Tisby II asserted plaintiff had been "wrongfully suspended without pay" due to her religious beliefs, in violation of N.J.S.A. 11A:2-13, and defendants had failed to reasonably accommodate her religious beliefs pursuant to the LAD. This complaint did not include any claims other women were permitted to wear head coverings while employed by CCCF.

Defendants moved to dismiss both complaints and provided a certification from the Warden. The Warden certified the Uniform Grooming Standards had been in place for over twenty years and neither religious nor secular head coverings were allowed. He further certified the uniform policy ensured "the safe and orderly operation of correctional facilities," as well as "the very important public value of presenting a unified, neutral and unbiased force to the public and to the inmates the department is charged with protecting." He stressed any accommodation to plaintiff would impose an undue hardship on defendants.

On August 7, 2015, after considering the arguments of both parties, a trial judge dismissed Tisby II. The judge recognized plaintiff had a sincere religious belief and the uniform requirement conflicted with her religious belief. However, the judge determined accommodating plaintiff's request would impose an undue hardship on CCCF because of overriding safety concerns, the potential for concealment of contraband, and the importance of uniform neutrality. The order dismissed the complaint "with prejudice, in accordance with Rule 4:6-2(e), or, in the alternative, that summary judgment be granted to [CCCF], in accordance with Rule 4:46, dismissing the complaint." On August 21, 2015, a different trial judge dismissed Tisby I with

prejudice, citing the entire controversy doctrine. These appeals followed.

## I.

We turn our attention to Tisby II because it was decided first. Plaintiff argues dismissal of Tisby II was in error because plaintiff's complaint stated a claim upon which relief could be granted. Alternatively, plaintiff contends dismissal was in error because discovery had not yet been completed. We disagree.

When challenging a complaint for failure to state a claim, R. 4:6-2(e), "the plaintiff is entitled to a liberal interpretation of its contents and to the benefits of all its allegations and the most favorable inferences which may be reasonably drawn from them." Burg v. State, 147 N.J. Super. 316, 319-20 (App. Div. 1977) (quoting Rappaport v. Nichols, 31 N.J. 188, 193 (1959)). Rule 4:6-2 provides if "matters outside the pleadings are presented to and not excluded by the court, the motion [for dismissal] shall be treated as one for summary judgment and disposed of as provided by Rule 4:46." Additionally, "[a] motion for summary judgment is not premature merely because discovery has not been completed, unless plaintiff is able to 'demonstrate with some degree of

particularity the likelihood that further discovery will supply the missing elements of the cause of action.'" Badiali v. N.J. Mfrs. Ins. Group., 220 N.J. 544, 555 (2015) (quoting Wellington v. Estate of Wellington, 359 N.J. Super. 484, 496 (App. Div.) certif. denied, 177 N.J. 492 (2003)).

The trial judge did not explicitly specify he was converting the motion to dismiss into a motion for summary judgment. However, in evaluating her complaint, the trial judge relied on records outside of the pleadings, including, the Warden's certification, defendant's Grooming Standards, plaintiff's responsive certification, and a photograph of plaintiff wearing a head covering. We discern no error in the judge's approach.

The core of plaintiff's complaint is a violation of her religious rights. Under the LAD, employers cannot impose any condition upon employees that "would require a person to violate . . . sincerely held religious practice or religious observance." N.J.S.A. 10:5-12(q)(1). However, an exception exists if an employer cannot accommodate "the employee's religious observance or practice without undue hardship on the conduct of the employer's business" after putting forth a "bona fide effort" to accommodate. Ibid. An "undue hardship" is defined as "an accommodation requiring unreasonable expense or

difficulty, unreasonable interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system or a violation of any provision of a bona fide collective bargaining agreement." N.J.S.A. 10:5-12(q)(3)(a).

To analyze claims under the LAD, New Jersey has adopted the "procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." Zive v. Stanley Roberts, Inc., 182 N.J. 436, 447 (2005). The plaintiff must first demonstrate a prima facie case of employment discrimination. Victor v. State, 203 N.J. 383, 408 (2010). In a religious discrimination case, a prima facie case includes a showing "(1) plaintiff belongs to a protected class; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment actions." El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 167 (App. Div. 2005).

Once a plaintiff establishes a prima facie case, an "inference of discrimination" is created. Zive, supra, 182 N.J. at 449. The employer can combat the inference of discrimination by articulating a "legitimate, nondiscriminatory reason for the employer's action." Ibid. If the employer can meet its burden,

the burden again shifts back to the employee to prove the reason provided by the employer is "merely a pretext for discrimination and not the true reason for the employment decision." Ibid. A plaintiff can prove pretext by using either circumstantial or direct evidence that "discrimination was more likely than not a motivating or determinative cause of the action" or plaintiff can discredit the legitimate reason provided by the employer. El-Sioufi, supra, 382 N.J. Super. at 173. Defendant is entitled to summary judgment if plaintiff is unsuccessful in this last step. Zive, supra, 182 N.J. at 456.

It is undisputed plaintiff satisfied her prima facie claim of discrimination. However, the trial court found defendants' concerns for the safety, security and neutrality of CCCF, were legitimate non-discriminatory reasons why allowing plaintiff an accommodation would cause an undue hardship on defendants. Relying upon Kelly v. Johnson, 425 U.S. 238 (1975), the trial judge also reasoned defendants' choice of uniform for its personnel was entitled to a presumption of validity which had not been overcome by plaintiff.

Our courts have not previously addressed this issue, but other courts have. "In a variety of contexts involving allegations of unlawful discrimination, [the] Court has looked to federal law as a key source of interpretive authority."

<u>Grigoletti v. Ortho Pharm, Corp.</u> 118 <u>N.J.</u> 89, 97 (1990). In <u>EEOC v. Geo Group, Inc.</u>, the Equal Employment Opportunity Commission (EEOC) brought a religious discrimination case on behalf of Muslim women employees against a private employer running a corrections facility for refusing to allow an exception to the prison's dress policy, which precluded them from wearing Muslim head coverings. 616 <u>F.3d</u> 265, 267 (3d Cir. 2010). Weighing the religious beliefs of the Muslim women against the employer's safety concerns the court agreed khimars, as well as other headgear, would present safety concerns in a prison setting because they could be used as a weapon to choke someone. <u>Id.</u> at 274-75. In <u>Webb v. City of Philadelphia</u>, a Philadelphia police officer requested permission to wear a headscarf while on duty, and the request was denied. 562 <u>F.3d</u> 256, 258 (3d Cir. 2009). The city prevailed arguing any accommodation would be an undue hardship because the "perception of its impartiality" of an officer was at stake. <u>Id.</u> at 261.

We do not minimize the religious significance of the khimar for the women who wear them. We recognize a compelling sense of religious obligation in the decision to wear a khimar. Ali Anmoura, Note, <u>Banning the Hijab in Prisons: Violations of Incarcerated Muslim Women's Right to Free Exercise of Religion</u>, 88 <u>Chi.-Kent L. Rev.</u> 657, 660 (2013). However, the trial judge

drew appropriate guidance from the logic of GEO and Webb, as well as the evidence presented, when determining an accommodation would impose a hardship on defendants. After weighing the safety concerns, including the safety risk and the ability to hide contraband in head coverings, as well as the necessity of uniform neutrality, the trial judge determined defendants met their burden of establishing accommodation was a hardship. Moreover, the employer's reasons for denying an accommodation were not pretextual. Therefore, plaintiff failed to overcome the finding of a hardship to defendants.[4] Consequently, summary judgment was properly entered.

## II.

Tisby I was decided subsequently. The second judge acknowledged plaintiff's factual assertion other women were permitted to wear head coverings in CCCF, but the judge entered dismissal based upon the entire controversy doctrine. Generally, the entire controversy doctrine, codified in Rule 4:30A, "embodies the principle that the adjudication of a legal

---

[4] Plaintiff claims further discovery was necessary to investigate "[p]ast allowances of employees to wear head coverings in defendants' facility," but plaintiff never provided information of any specific instances of employees who were allowed to wear head coverings. Thus, plaintiff did not satisfy the Badiali, supra, 220 N.J. at 555, criteria to show how discovery was necessary to prove an element of her claim. Therefore, the judge properly rejected this assertion.

controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 605 (2015) (quoting Highland Lakes Country Club & Cmty. Ass'n v. Nicastro, 201 N.J. 123, 125 (2009)).

The judge found Tisby I was barred by the entire controversy doctrine because plaintiff should have raised all of her claims, including the allegation that other women had previously been allowed to wear head coverings, in one action. We agree. A review of the two complaints showed only slightly different allegations arising from the same events and CCCF should not have to defend against plaintiff's complaint more than once. Therefore, because we affirm the decision in Tisby II, we also find Tisby I was properly dismissed based on the entire controversy doctrine.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0326-15T3