**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2828-16T3

MARCOS GARCIGA,

     Plaintiff-Appellant,

v.

TOWN OF WEST NEW YORK,
MAYOR FELIX ROQUE, and
CARIDAD RODRIGUEZ,

     Defendants-Respondents.

_____

Argued December 2, 2019 – Decided December 27, 2019

Before Judges Fasciale, Moynihan and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2311-16.

Benjamin O. Weathers argued the cause for appellant (Caruso Smith Picini PC, attorneys; Louis Alexander Zayas, on the briefs).

Thomas A. Abbate argued the cause for respondents (De Cotiis FitzPatrick Cole & Giblin LLP, attorneys; Thomas A. Abbate, of counsel and on the brief; Amy E. Shotmeyer, on the brief).

PER CURIAM

Plaintiff appeals from a December 12, 2016 order dismissing his complaint with prejudice for failure to state a claim upon which relief can be granted, Rule 4:6-2(e); and a March 3, 2017 order denying reconsideration. Plaintiff's fifteen-page complaint, including seventy enumerated paragraphs, contains three causes of action:  a violation of the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2 (count one);  a violation of the New Jersey Civil Racketeer Influenced and Corrupt Organizations Act (NJRICO), N.J.S.A. 2C:41-1 to -6.2 (count two);  and conspiracy to violate the NJRICO, particularly N.J.S.A. 2C:41-1(c) and N.J.S.A. 2C:41-2(d) (count three).  In addition to seeking a declaration that defendants violated his rights, plaintiff seeks monetary damages.

We reverse.

## I.

We review motions to dismiss de novo.  Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016).  "Ordinarily a dismissal for failure to state a claim is without prejudice."  Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.1 on R. 4:6-2(e) (2020).  Here, the judge entered the order with prejudice, which, at a minimum, should have been without prejudice.  Nevertheless, at this early

stage in the litigation, our stringent standard of review of <u>Rule</u> 4:6-2(e) orders requires an outright reversal. By doing so, we do not mean to imply defendants are without an opportunity to later seek summary judgment—or any other appropriate relief.

A motion to dismiss a complaint for failure to state a cause of action must be denied if, affording plaintiffs the benefit of all allegations and all favorable inferences, a cause of action has been set forth. <u>R.</u> 4:6-2(e); <u>see</u> <u>Tisby v. Camden Cty. Corr. Facility</u>, 448 N.J. Super. 241, 247 (App. Div. 2017). We emphasize that we are required to give plaintiff the benefit of all favorable inferences. Indeed, "<u>Rule</u> 4:6-2(e) motions to dismiss should be granted in 'only the rarest [of] instances.'" <u>Banco Popular N. Am. v. Gandi</u>, 184 N.J. 161, 165 (2005) (alteration in original) (quoting <u>Lieberman v. Port Auth. of N.Y. & N.J.</u>, 132 N.J. 76, 79 (1993) (citation omitted)).

"[O]ur inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989). We search the complaint "in depth and with liberality" to determine whether the basis for a cause of action may be found even in an obscure statement of a claim, opportunity should be given to amend if necessary. <u>Ibid.</u> (internal quotation marks and citation omitted). "Dismissal

A-2828-16T3

is appropriate only if the complaint states no basis for relief and discovery would not provide one." J-M Mfg. Co., Inc. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 453 (App. Div. 2015) (internal quotation marks and citation omitted).  We must accept the allegations in the complaint as truthful when undertaking our analysis.

II.

The West New York Police Department employed plaintiff as a police officer since 1999.  At the relevant timeframe—between 2013 and 2015—defendant Felix Roque served as Mayor of West New York, and defendant Caridad Rodriguez (the Commissioner) (collectively defendants), was designated as Commissioner of Public Safety, and in that capacity, she had authority to promote officers.

In September 2013, plaintiff took the promotional exam for lieutenant and in February 2014, he learned that he ranked second among the top three candidates eligible for promotion.  During the next few months, plaintiff participated in political events supporting his brother-in-law, who was running for Freeholder against an individual endorsed by a politician (the politician) of a nearby town.  Thereafter, plaintiff continued supporting his brother-in-law's political campaign.

In September 2014—after the primary elections that June—the police department promoted the first of the top-ranking officers to lieutenant. This promotion made plaintiff the next officer in line for promotion. That same month, plaintiff spoke to defendants concerning his promotion, and they said that he needed to "make peace with the hill"—meaning with the politician. Mayor Roque offered to help, and he told plaintiff to attend a political event for the politician. Although he agreed initially to do so, plaintiff reconsidered and later declined to attend the political event.

In December 2014, another round of promotions was scheduled. The next month, the Commissioner told plaintiff that he was being penalized for his political affiliation, specifically citing a photograph that depicted plaintiff's face in support of another candidate from the other party. Wanting a promotion, plaintiff attempted to "make peace."

In June 2015, the department started moving forward with promotions, proceeding slowly. Plaintiff's colleagues blamed him for the delay, avoided him, and refused to speak with him. The police department eventually promoted plaintiff to lieutenant. But plaintiff asserted he would have been promoted in June 2014 or August 2015 if not for his political affiliations. He alleged he lost

approximately $20,000 in salary per year, and that the delay in his promotion prevented him from taking the captain's exam in October 2016 until 2019.

As to the NJCRA, the judge observed that plaintiff must allege an adverse employment action sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. The trial judge concluded that the mere "delay in a promotion" did not meet this standard, especially because plaintiff received the promotion. As to the NJRICO claims, the judge determined that plaintiff failed to establish more than one racketeering act—the delayed promotion.

### III.

On appeal, plaintiff argues this is not a discrimination case, but rather, that he pled sufficient facts to support claims under the NJCRA and NJRICO. As for the NJCRA, he alleged defendants conditioned his promotion on his relinquishment of his First Amendment rights. As to the NJRICO claims, plaintiff alleged various incidents of conspiracy and extortion to coerce him into changing his political affiliation—a pattern of racketeering—that promoted a political patronage policy. He maintains his complaint survived the Rule 4:6-2(e) motion.

A-2828-16T3

A.

The judge dismissed the NJCRA claim because the police department promoted plaintiff—albeit after a delay—to lieutenant. The judge reasoned that plaintiff therefore suffered no adverse employment action. Accordingly, the judge concluded that without an adverse employment action sufficient to deter a person from exercising his First Amendment rights, there was no claim under the NJCRA.

The NJCRA affords a private right of action for conduct under the color of law that interferes with rights secured by the constitutions of this State and the United States. N.J.S.A. 10:6-2(c). The statute, which permits a cause of action for retaliation based on free speech and political affiliation, provides in pertinent part:

> Any person who has been deprived of any . . . privileges or immunities secured by the Constitution or laws of the United States, or . . . of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.
>
> [N.J.S.A. 10:6-2(c).]

A-2828-16T3

In general, "[a] plaintiff who alleges retaliation for political affiliation must show: (1) he was employed at a public agency in a position that does not require political affiliation; (2) he was engaged in constitutionally protected conduct; and (3) the conduct was a substantial or motivating factor in the government's employment decision." Lapolla v. Cty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017) (internal quotation marks and citation omitted).

The United States Supreme Court has held that the grant or denial of a promotion to a non-political position "based on political affiliation or support are an impermissible infringement on the First Amendment rights of public employees." Rutan v. Republican Party of Ill., 497 U.S. 62, 75 (1990). Indeed, as we have recognized, public employees are protected under the First Amendment "from promotion, transfer . . . and other hiring decisions conditioned on political affiliation[.]" Lapolla, 449 N.J. Super. at 300 (citation omitted). Thus, regardless of whether he suffered an adverse employment action, plaintiff pled adequate facts of alleged retaliatory actions to sufficiently chill him from engaging in a protected activity.

The Court rejected the notion that only employment decisions that are the "substantial equivalent of a dismissal violate a public employee's rights under the First Amendment." Rutan, 497 U.S. at 75 (internal quotation marks and

citation omitted). Such a test would be "unduly restrictive" because there are less harsh deprivations than dismissal that nevertheless "press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy." Ibid. The Court stated that the First Amendment protects state employees from "even an act of retaliation as trivial as failing to hold a birthday party for a public employee . . . when intended to punish [him or] her for exercising [his or] her free speech rights." Id. at 75-76 n.8 (first alteration in original) (citation omitted). The First Amendment safeguards individuals—except in the most compelling circumstances—from interfering with "its employees' freedom to believe and associate, or to not believe and not associate." Ibid.

Thus—and keeping in mind that courts grant Rule 4:6-2(e) motions only in the rarest of instances—plaintiff's promotion to lieutenant did not render his claim under the NJCRA nugatory. There remain multiple alleged facts that support such a cause of action: he supported his brother-in-law's campaign, in opposition to defendants and their allies; his promotion was conditioned on his political support; he had to "make peace"; he had to buy a ticket to a political fundraiser of the opposite party; and he was "penalized" for his association with his brother-in-law. Furthermore, although he was not required to allege an

adverse employment action, plaintiff did so by insisting that he lost $20,000 annually, he lost overtime pay, and his opportunity to sit for the captain's exam in 2016 was delayed until 2019. Again, at this early stage in the litigation, we must accept these allegations as true.

B.

The judge found plaintiff's complaint referred only to one instance of alleged illegal activity—the delay in promotion to lieutenant. He dismissed plaintiff's NJRICO claims because there was "no evidence of a continuo[u]s and related pattern of racketeering activity." Applying our de novo review, we conclude plaintiff alleged sufficient facts to establish claims under the NJRICO statute, including various acts of conspiracy and extortion to coerce him into changing his political affiliation.

NJRICO provides in pertinent part:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in or activities of which affect trade or commerce to conduct or participate, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> [N.J.S.A. 2C:41-2(c).]

NJRICO is broader in scope than the federal RICO statute. State v. Ball (Ball I), 268 N.J. Super. 72, 104 (App. Div. 1993). New Jersey courts take a liberal

stance in permitting plaintiffs to plead NJRICO violations, rejecting the narrow construction of the federal statute that many circuits have adopted. Id. at 103-104. "[T]he primary criterion of New Jersey's 'pattern of racketeering activity' is 'relatedness,'" which "calls for the application of a broad standard involving the totality of all relevant circumstances" that may include "continuity." State v. Ball (Ball II), 141 N.J. 142, 169 (1995) (citation omitted). Pursuant to N.J.S.A. 2C:41-2(c), a plaintiff must prove the following five elements:

> (1) the existence of an enterprise; (2) that the enterprise engaged in or its activities affected trade or commerce; (3) that defendant was employed by, or associated with the enterprise; (4) that he or she participated in the conduct of the affairs of the enterprise; and (5) that he or she participated through a pattern of racketeering activity.
>
> [Ball I, 268 N.J. Super. at 99.]

The statute defines a racketeering act to include any of the enumerated crimes in N.J.S.A. 2C:41-1(a). A pattern of racketeering activity is defined with two components: (1) at least two incidents of racketeering conduct (predicate acts); and (2) the conduct must have "the same or similar purposes, results, participants or victims or methods of commission or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." N.J.S.A. 2C:41-1(d).

Plaintiff claimed numerous discrete criminal incidents as part of his alleged pattern of racketeering relating to conspiracy to extort an employee to relinquish his First Amendment rights in exchange for a government benefit, and utilization of government positions to withhold a government benefit for a corrupt purpose. Plaintiff maintains these incidents satisfy the elements of corruption of a public resource, conspiracy, and extortion. He argues these incidents were related to the same purpose: advancing an illegal patronage policy, and promoting the mayor's political power.[1] NJRICO uses the phrase "incidents," while the federal RICO statute uses "acts." The Ball II Court noted that the pertinent legislative history considered "act" to be overly restrictive, "whereas an incident more aptly represents . . . circumstance or happening." 141 N.J. at 167 (internal quotation marks and citation omitted).

Under our standard of review, we must search the allegations in the complaint to see whether they support a cause of action. Plaintiff alleged the predicate acts of bribery, N.J.S.A. 2C:27-2 (indirectly offering plaintiff the opportunity for promotion following solicitation of campaign funds); theft by extortion, N.J.S.A. 2C:20-5 (obtaining campaign funds by withholding action as

---

[1] Plaintiff asserts that for pleading purposes, he alleged two predicate acts, but that he could have included others such as conspiracy and wire fraud.

an official); official misconduct, N.J.S.A. 2C:30-2 (unauthorized exercise of power by withholding the promotion to injure plaintiff); and corruption of a public resource, N.J.S.A. 2C:27-12 (using public resources to retaliate against plaintiff). Along these lines, we look to the allegations and must give plaintiff all favorable inferences.

That said, plaintiff alleged numerous incidents. He alleged that in September 2014, Mayor Roque told him he had to "make peace with the hill," and he had to attend a political event sponsored by the other party. That conversation, as alleged in the complaint, occurred in response to plaintiff's inquiry about his own promotion once he learned that the first candidate on the list received a promotion.

Also in September 2014, plaintiff arranged a meeting with the Commissioner to discuss his promotion. He alleged that he then learned that she would help "make things right," but that he could no longer support his brother-in-law's campaign. Plaintiff asserted that the Commissioner also stated that he needed to "make peace with the hill."

Plaintiff contended that in October 2014, he spoke to the Mayor and confirmed he would attend the political event as a guest of the Mayor. But then plaintiff talked to the Mayor and explained he would not attend. Plaintiff alleged

13

he changed his mind because he concluded it should be sufficient that he was the highest ranking eligible person for the promotion.

Plaintiff alleged that the Commissioner also conditioned his promotion on further political action. He alleged that—in yet another incident—the Commissioner called him in January 2015 about the photograph. Plaintiff alleged the Commissioner stated no one believed plaintiff when he said he had no knowledge of the photograph, and the Commissioner said that he was being penalized for the photograph.

IV.

In summary, plaintiff alleged sufficient facts to overcome defendants' Rule 4:6-2(e) motion. We reach that conclusion emphasizing our limited standard of review. We anticipate the parties will engage in dispositive motion practice on the NJCRA and NJRICO claims, including but not limited to applications challenging whether defendants were part of an enterprise, and if so, whether the purported enterprise was engaged in activities affecting commerce. Those questions go more towards the merits of plaintiff's allegations, rather than whether—affording plaintiff the benefit of all allegations and all favorable inferences—plaintiff sufficiently alleged facts establishing a valid cause of action. Of course, we take no position and leave to another day

14

the outcome of any additional motion practice seeking to dismiss all or part of the complaint.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2828-16T3