**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2493-21

MARVEN ROSEUS,

    Plaintiff-Appellant,

v.

STATE OF NEW JERSEY and
STATE OF NEW JERSEY
DEPARTMENT OF
CORRECTIONS,

    Defendants-Respondents.

_____

Argued January 16, 2024 – Decided March 20, 2024

Before Judges Gilson, DeAlmeida, and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2341-18.

Deborah Lynn Mains argued the cause for appellant (Costello & Mains, LLC, attorneys; Deborah Lynn Mains, on the brief).

James M. Duttera, Deputy Attorney General, argued the cause for respondents (Matthew J. Platkin, Attorney General, attorney; Sookie Bae-Park, Assistant Attorney

General, of counsel and on the brief; Azeem M. Chaudry, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Marven Roseus is a member of the religious organization Israel United in Christ. Under the tenets of his faith, he does not shave the hair on his head or face. He applied for employment with the Department of Corrections (the DOC) and requested an accommodation so he could attend the DOC's training academy without completely shaving his facial hair. The DOC denied the accommodation, later claiming that its grooming policy was necessary to maintain esprit de corps during the training of corrections officers.

Plaintiff appeals from an order granting summary judgment to the DOC and dismissing his claims of failure to accommodate and retaliation in violation of the Law Against Discrimination (the LAD), N.J.S.A. 10:5-1 to -50. We reverse the portion of the order dismissing the failure to accommodate claim because there are genuine issues of material fact concerning whether the DOC could have accommodated plaintiff's request. We affirm the portion of the order dismissing plaintiff's retaliation and punitive damages claims. Accordingly, we reverse in part, affirm in part, and remand for a trial on plaintiff's remaining claim.

I.

2

Plaintiff describes himself as a person of the Jewish faith, and he has been a member of the religious organization Israel United in Christ since 2013. In accordance with the dictates of his religion, plaintiff does not shave the hair on his face or head. Nevertheless, there are circumstances when plaintiff's religion will permit an adherent to shave if, for example, shaving is needed to preserve someone's health or safety.

In July 2015, plaintiff took a civil service exam to become a State corrections officer. Several months later, the DOC sent plaintiff an employment application and instructed him to report to a training facility on December 1, 2015. Subsequently, plaintiff went to the DOC training facility, completed an employment application, and signed a document setting forth the expectations for trainees while they attended the training academy.

Persons interested in becoming DOC officers must attend a training program at the Correctional Staff Training Academy (the CST Academy) for approximately fourteen weeks. While attending the CST Academy, trainees are referred to as "apprentices," and they are required to acknowledge and agree to abide by the CST Academy Expectations. Those Expectations state that apprentices will be subject to "[s]trict [p]ara-military discipline" and that the CST Academy's rules and regulations will be strictly enforced. Among other

3

requirements, the CST Academy Expectations require apprentices to abide by grooming standards. In that regard, the CST Academy Expectations state, in relevant part: "Male [apprentices] will be required to keep a shaved head and be clean[-]shaven at all times. Female [apprentices] will be required to keep hair off of their collar and ears."

Seven months after completing the application, in July 2016, plaintiff attended two orientation meetings. According to plaintiff, at the first meeting, he was told that any request for a religious accommodation must be signed by a religious elder or church leader and submitted in writing on a document bearing the church's letterhead. At the second orientation meeting, plaintiff submitted a letter from an elder of his church requesting a religious accommodation to be exempt from the shaving requirement.

Following the orientation meetings, plaintiff contacted the Custody Recruitment Unit of the DOC's Office of Human Resources (the DOC HR) to ask about the status of his request for a religious accommodation. Between July 21, 2016 and July 22, 2016, a manager in the DOC HR sent an email concerning plaintiff's request to Guy Cirillo, the then-Director of the CST Academy, which was then forwarded to Major Wayne Manstream, who oversaw the CST Academy. Cirillo was then informed that the then-Director of Legal and

Regulatory Affairs had concluded there was legal precedent for the DOC to enforce its grooming policy. No one from the DOC contacted plaintiff about his request for a religious accommodation before he arrived for the first day of training.

On July 25, 2016, plaintiff reported to the CST Academy for training. In preparation for his first day, plaintiff had hired a barber to trim his beard down to less than one-eighth of an inch. The barber had similarly trimmed the hair on plaintiff's head.

On the first day of training, plaintiff was informed that he was not properly shaven. Thereafter, he had a series of discussions with Cirillo and Manstream. During those discussions, plaintiff presented a letter from Nathanyel Ben Israel, an elder of plaintiff's church, requesting a religious accommodation to allow plaintiff not to shave his facial hair. Plaintiff also informed Manstream that he needed the accommodation for medical reasons and presented a note from his dermatologist, which explained that plaintiff suffered from pseudofolliculitis barbae, which would be aggravated if plaintiff shaved with a razor.

Ultimately, plaintiff was informed that he must shave, or he would be dismissed from the CST Academy. When plaintiff refused to shave, he was dismissed.

A-2493-21

Three days later, plaintiff filed a complaint with the DOC's Equal Employment Division (EED), alleging that he had been subjected to religious discrimination. Following an investigation, in February 2017, the DOC informed plaintiff that "the EED did not substantiate a violation of the [p]olicy [p]rohibiting [d]iscrimination in the [w]orkplace."

Meanwhile, on January 9, 2017, plaintiff filed a five-count complaint against the DOC and the State of New Jersey. Plaintiff alleged that defendants had violated the LAD in dismissing him from the CST Academy, and he asserted causes of action for discriminatory failure to hire, discriminatory discharge, failure to accommodate, and discrimination in a place of public accommodation. Plaintiff also sought equitable relief.

Defendants moved to dismiss plaintiff's complaint. Plaintiff opposed that motion and moved to amend his complaint. On June 30, 2017, the trial court entered an order and written opinion denying plaintiff's motion to amend his complaint and granting defendants' motion to dismiss plaintiff's complaint with prejudice. Plaintiff appealed from those orders, and we reversed. See Roseus v. State, No. A-5086-16 (App. Div. Sept. 10, 2018). We remanded the matter to the trial court so that, among other things, a record could be developed regarding whether the DOC engaged in a "bona fide effort" to accommodate

6

plaintiff's religious beliefs or whether the DOC was "unable to reasonably accommodate" plaintiff without undue hardship. Id. at 2, 13-14.

While that appeal was pending, in March 2017, plaintiff took another civil service exam for non-correction officer entry-level law enforcement positions. Later that year, in October 2018, the DOC contacted plaintiff and invited him to apply for employment with the DOC as a State correctional police officer. Plaintiff was then directed to report to a training center in December 2018, where he completed an application. After investigating plaintiff's 2018 application, the DOC determined that plaintiff had made misrepresentations because he had not disclosed that he had previously attended and been dismissed from the CST Academy. Accordingly, on July 12, 2019, plaintiff was notified that his name was removed from the eligible list.

Plaintiff appealed that determination, but in January 2020, the Division of Appeals and Regulatory Affairs of the Civil Service Commission (the Division) rejected plaintiff's appeal. The Division found that plaintiff had failed to provide any substantive information to refute the DOC's position that he had falsified his employment application. The Division also found that information related to plaintiff's prior removal from the CST Academy was material and should have been disclosed on the application.

In February 2020, plaintiff amended his complaint in this action to include an additional claim of retaliation under the LAD. The parties, thereafter, conducted and completed discovery.

In January 2022, defendants moved for summary judgment. In support of that motion, defendants argued: (1) the DOC's grooming policy required all apprentices to shave, and it did not violate the LAD because section 12(p) of the LAD expressly permitted employers to impose reasonable grooming standards on employees; (2) plaintiff failed to demonstrate that the DOC's policy was applied in a discriminatory manner or with discriminatory intent; and (3) the DOC demonstrated a bona fide effort to accommodate plaintiff's request for a religious accommodation and that the request would cause it undue hardship.

Defendants relied on Cirillo's and Manstream's deposition testimonies and a certification from Manstream. Cirillo explained that the grooming policy was in place because there was "really no place for individuality" at the CST Academy. He maintained that by minimizing "individuality[,] everyone starts at the same foundation." Manstream described the concept of "esprit de corps," which facilitates the goal of creating unit cohesion and trust and strips away any individual differences among the apprentices. In that regard, Manstream stated

A-2493-21

the "main goal" at the CST Academy was to mold apprentices "who come from many different backgrounds . . . into unified members of a cohesive team."

The DOC maintained that apprentices were required to shave, and there were no exceptions. The DOC acknowledged, however, that it had previously granted a religious accommodation to an apprentice, and the DOC also acknowledged that once apprentices graduated from the CST Academy, corrections officers were allowed to grow facial hair up to one-quarter of an inch in length. The DOC also asserted that apprentices needed to be clean-shaven to be fitted with masks that they would wear at correctional facilities if there was a fire.

On April 14, 2022, the trial court heard argument on defendants' motion. Five days later, on April 19, 2022, the trial court issued an order granting defendants' motion and dismissing plaintiff's amended complaint with prejudice. The court explained the reasons for its decision on the record.

Initially, the trial court found plaintiff failed to establish a prima facie claim of religious discrimination. In that regard, the court reasoned that plaintiff failed to demonstrate that he met his employer's legitimate expectations and that others outside his protected class were treated differently. The court pointed out

that plaintiff had twice signed the CST Academy Expectations and, therefore, he knew he had to comply with the grooming policy.

In addition, the court reasoned that even if plaintiff had made a prima facie showing, defendants articulated a legitimate, non-discriminatory reason for the grooming policy, including the requirement that apprentices be clean-shaven. The court held that the grooming policy was facially neutral and generally applicable. The court also accepted defendants' position that there was no room for individuality at the CST Academy and that the grooming policy furthered the CST Academy's goal of creating an esprit de corps. Accordingly, the trial court held that plaintiff could not prove that his religion was a basis for the decision to discharge him.

The court also rejected plaintiff's failure to accommodate claim. The court held that defendants had demonstrated a bona fide effort to accommodate plaintiff and that any accommodation of plaintiff would cause undue hardship to the DOC. In support of its rulings, the trial court reasoned that section 12(p) of the LAD supported summary judgment on plaintiff's claim of a failure to accommodate. The court held that the section expressly permitted employers to impose reasonable grooming policies and superseded the LAD's "general requirements to provide . . . reasonable religious accommodations."

The court also found that defendants were entitled to summary judgment on plaintiff's claim of retaliation because plaintiff failed to show a retaliatory motive. The court found that there was no material dispute that plaintiff's 2018 application was denied because the DOC determined that he had concealed his prior attendance at and dismissal from the CST Academy in 2016 and, therefore, plaintiff's application was false.

Plaintiff now appeals from the April 19, 2022 order dismissing his complaint with prejudice.

## II.

On appeal, plaintiff argues that the trial court erred in granting summary judgment to defendants and dismissing all his LAD claims. He contends that he presented prima facie LAD claims of (1) a failure to accommodate his religious beliefs that resulted in discrimination; and (2) retaliation. He also argues that it was premature to dismiss his punitive damages claim.[1]

We review a grant or denial of summary judgment de novo, "applying the same standard used by the trial court." Samolyk v. Berthe, 251 N.J. 73, 78

---

[1] In his brief on appeal, plaintiff elected not to address his claim that defendants violated the public accommodation provision of the LAD. Thus, we deem that claim to be abandoned. See State v. Shangzhen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018), aff'd o.b., 240 N.J. 56, 56 (2019); Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011).

A-2493-21

(2022). That standard requires us to "determine whether 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (quoting R. 4:46-2(c)). "Summary judgment should be granted . . . 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). We do not defer to the trial court's legal analysis or statutory interpretation. See RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018); Perez v. Zagami, LLC, 218 N.J. 202, 209 (2014).

Having reviewed the record and law, we hold that plaintiff presented a prima facie claim of a failure to accommodate his religious beliefs. We, therefore, reverse that portion of the summary judgment order and remand that claim to be assessed at a jury trial. We also hold that plaintiff failed to present a prima facie claim of retaliation under the LAD or a right to punitive damages

under the LAD. Thus, we affirm the portion of the summary judgment order that dismissed those claims with prejudice.

A.    The LAD and Its Requirement for Reasonable Accommodation.

"The 'overarching goal of the [LAD] is nothing less than the eradication "of the cancer of discrimination."'" Zive v. Stanley Roberts, Inc., 182 N.J. 436, 446 (2005) (alteration in original) (quoting Fuchilla v. Layman, 109 N.J. 319, 334 (1988)). In that regard, "the LAD 'unequivocally expresses a legislative intent to prohibit discrimination in all aspects of the employment relationship, including hiring and firing, compensation, the terms and conditions of employment, and retirement.'" Alexander v. Seton Hall Univ., 204 N.J. 219, 227-28 (2010) (quoting Nini v. Mercer Cnty. Cmty. Coll., 202 N.J. 98, 106-07 (2010)). "Because of its remedial purpose, the LAD should be construed liberally to achieve its aims." Zive, 182 N.J. at 446.

The LAD prohibits employers from "discharg[ing]" or "refus[ing] to hire or employ" a person because of that person's "creed." N.J.S.A. 10:5-12(a). The LAD also prohibits employers from imposing a condition on employees that "would require a person to violate or forego a sincerely held religious practice or observance" unless, "after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's

religious observance or practice without undue hardship on the conduct of the employer's business." N.J.S.A. 10:5-12(q)(1).

In that regard, the LAD states that it is an unlawful employment practice:

> For any employer to impose upon a person as a condition of obtaining or retaining employment, including opportunities for promotion, advancement or transfers, any terms or conditions that would require a person to violate or forego a sincerely held religious practice or religious observance . . . unless, after engaging in a bona fide effort, the employer demonstrates that it is unable to reasonably accommodate the employee's religious observance or practice without undue hardship on the conduct of the employer's business.
>
> [Ibid.]

An "undue hardship" is defined as "an accommodation requiring unreasonable expense or difficulty, unreasonable interference with the safe or efficient operation of the workplace or a violation of a bona fide seniority system or a violation of any provision of a bona fide collective bargaining agreement." N.J.S.A. 10:5-12(q)(3)(a). The LAD goes on to identify factors that should be considered in determining whether the accommodation constitutes an undue hardship. N.J.S.A. 10:5-12(q)(3)(b)(i) to (iii). Those factors include the cost of the accommodation, the number of individuals who will need the accommodation, and the degree to which providing the accommodation would

14

affect an employer with multiple facilities.  Ibid.  The LAD also states that an "accommodation shall be considered to constitute an undue hardship if it will result in the inability of an employee to perform the essential functions of the position in which he or she is employed."  N.J.S.A. 10:5-12(q)(3)(c).

"To analyze claims under the LAD, New Jersey has adopted the 'procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).'"  Tisby v. Camden Cnty. Corr. Facility, 448 N.J. Super. 241, 248 (App. Div. 2017) (citation reformatted) (quoting Zive, 182 N.J. at 447).  Under that methodology, a plaintiff must first demonstrate a prima facie claim of employment discrimination for a failure to accommodate. Victor v. State, 203 N.J. 383, 408 (2010).  If a plaintiff establishes a prima facie case, an "inference of discrimination" is created.  Zive, 182 N.J. at 449.  The burden then shifts to the employer to "combat the inference of discrimination by articulating a 'legitimate, non[-]discriminatory reason for the employer's action.'"  Tisby, 448 N.J. Super. at 248-49 (quoting Zive, 182 N.J. at 449). Where a plaintiff alleges a failure to accommodate a religious practice, the employer must provide "legitimate[,] non-discriminatory reasons why" it "cannot accommodate 'the employee's religious observance or practice without undue hardship on the conduct of the employer's business' after putting forth a

15

'bona fide effort' to accommodate." Id. at 249, 248 (quoting N.J.S.A. 10:5-12(q)(1)).

"If the employer can meet its burden, the burden again shifts back to the employee to prove the reason provided by the employer is 'merely a pretext for discrimination and not the true reason for the employment decision.'" Id. at 249 (quoting Zive, 182 N.J. at 449). "A plaintiff can prove pretext by using either circumstantial or direct evidence that 'discrimination was more likely than not a motivating or determinative cause of the action' or plaintiff can discredit the legitimate reason provided by the employer." Ibid. (quoting El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 173 (App. Div. 2005)).

Plaintiff's allegations focused on the DOC's failure to accommodate his religious practice of not shaving his face or head. He does not allege, and the evidence he has submitted does not support, a separate and independent claim of religious discrimination apart from the failure to accommodate. In that regard, plaintiff argues that his termination from the CST Academy "was discriminatory because it resulted from an unlawful failure to accommodate his sincerely held religious belief [or] was motivated by his religious practice." Accordingly, we focus our analysis on whether plaintiff has established a prima facie claim of a failure to reasonably accommodate his religious practice.

Plaintiff has established that a tenet of his religion prohibits him from shaving the hair on his face and head. During orientation for the CST Academy, plaintiff was informed that he could apply for a religious accommodation. Plaintiff then submitted a letter from an elder of his church asking for the accommodation. Consequently, the DOC was aware of plaintiff's request for a religious accommodation when plaintiff appeared for the first day of training.

The record reflects that the DOC internally discussed the request for an accommodation but never communicated to plaintiff a denial before the first day of training. The record also establishes that the only reason plaintiff was dismissed from the CST Academy in 2016 was his failure to shave in accordance with the grooming policy. While the DOC has contended that plaintiff could have sought an exception from his church, on this summary judgment record, we accept plaintiff's position because there is no definitive evidence that plaintiff's church would have granted an exception.

There are material issues of disputed fact concerning whether the DOC engaged in a bona fide effort to accommodate plaintiff and whether an accommodation would have imposed an undue hardship on the DOC. Addressing its efforts to accommodate plaintiff's religious practice, the DOC has submitted documents demonstrating internal communications among

17

employees of the DOC HR and CST Academy. Those communications indicate that there was a belief by certain DOC employees that there was legal precedent for not providing an accommodation. The prior case that the DOC relied on, however, was a case where the DOC initially accommodated a candidate by permitting him to grow a beard no longer than one-eighth of an inch and only discharged the employee after he had violated the accommodation. See Valdes v. State, No. 05-3510, 2007 WL 1657354 (D.N.J. June 6, 2007), aff'd, 313 F. App'x 499 (3d Cir. Aug. 12, 2008).[2]

The communications submitted by the DOC do not establish a bona fide effort. Instead, those communications raise material issues of disputed fact concerning why there was not a greater effort to accommodate plaintiff's request. In addition, there are material issues of disputed fact concerning why plaintiff was not notified that his request was rejected before he appeared for his first day of employment and training.

More critically, there are material issues of disputed fact as to whether providing plaintiff a religious accommodation would have created an undue hardship for the DOC. The DOC argues that its grooming policy is designed to

---

[2] We cite to this unpublished case not as precedent but because the DOC relied on the case.

create an esprit de corps among the apprentices.  While it has submitted numerous certifications and deposition testimonies of DOC employees concerning the policy, it has not explained why being clean-shaven creates such a spirit.  Plaintiff showed up to the first day of employment with a beard that had been trimmed to less than one-eighth of an inch.  A jury must decide whether that amount of facial hair would so distinguish plaintiff that he could not establish a cohesive bond with his fellow apprentices.  In that regard, the DOC has not identified any cost associated with accommodating plaintiff, nor has the DOC identified whether there would be a large number of people who would have to be similarly accommodated.  More fundamentally, the DOC presented no evidence that providing plaintiff a religious accommodation would result in plaintiff failing to properly perform his training or become a qualified corrections officer.  In that regard, it is undisputed in the record that after graduation from the CST Academy, corrections officers are allowed to have a beard up to one-quarter of an inch in length.

The DOC also has not contended that being clean-shaven is a safety issue.  While it argues that apprentices must be clean-shaven to be fitted for smoke masks, it has not explained how corrections officers with beards one-quarter of an inch in length can use those smoke masks once they have been fitted.

19

The DOC argues that its grooming policy is allowed under section 12(p) of the LAD. That provision states:

> Nothing in the provisions of this section shall affect the ability of an employer to require employees to adhere to reasonable workplace appearance, grooming and dress standards not precluded by other provisions of State or federal law, except that an employer shall allow an employee to appear, groom and dress consistent with the employee's gender identity or expression.
>
> [N.J.S.A. 10:5-12(p).]

The trial court concluded that the DOC did not have to provide plaintiff with a religious accommodation because section 12(p) of the LAD superseded section 12(q). We reject that interpretation of the LAD for several reasons. First, the plain language of sections 12(p) and 12(q) of the LAD is not in conflict. Section 12(p) allows employers to have reasonable appearance, grooming, and dress standards. Section 12(q), nevertheless, directs that grooming standards are still subject to a reasonable accommodation for an employee's religious practice, unless the employer can demonstrate that that accommodation would impose an undue hardship. This plain meaning interpretation of the two provisions of the LAD is consistent with the Legislature's intent to eliminate discrimination in all aspects of employment.

In summary, plaintiff established a prima facie showing of a failure to accommodate his religious practice. There are material issues of disputed fact concerning whether the DOC made a bona fide effort to accommodate plaintiff's religious practice and whether the accommodation would have imposed an undue hardship. Those issues must be determined by a jury at a trial. We, therefore, vacate the portion of the summary judgment order that dismissed plaintiff's failure to accommodate claim under the LAD and remand that claim for trial by a jury.

B.    Plaintiff's Claim of Retaliation Under the LAD.

The LAD prohibits employers from taking "reprisals against any person because that person has opposed any practices or acts forbidden under [the LAD]."  N.J.S.A. 10:5-12(d); see also Dunkley v. S. Coraluzzo Petroleum Transporters, 437 N.J. Super. 366, 375 (App. Div. 2014).  To state a prima facie case of retaliation, a "plaintiff must show that 1) [he or] she was engaged in a protected activity known to [the] defendant; 2) [he or] she was thereafter subjected to an adverse employment decision by the defendant; and 3) there was a causal link between the two."  Royster v. N.J. State Police, 439 N.J. Super. 554, 575 (App. Div. 2015) (first and third alterations in original) (quoting Woods-Pirozzi v. Nabisco Foods, 209 N.J. Super. 252, 274 (App. Div. 1996)).

21

Like in all LAD cases, if a plaintiff establishes a prima facie claim of retaliation, the burden then shifts to the employer to "articulate a legitimate, non-retaliatory reason for the decision." Young v. Hobart W. Grp., 385 N.J. Super. 448, 465 (App. Div. 2005) (quoting Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 549 (App. Div. 1995)). "The plaintiff is then 'afforded a fair opportunity' to show that the reason given [by the employer] 'is a pretext for the retaliation or that a discriminatory reason more likely motivated the employer.'" Royster, 439 N.J. Super. at 575-76 (quoting Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436, 445 (App. Div. 1990)).

Plaintiff claims that he was retaliated against when his employment application was rejected in 2018. There is no evidence in the record demonstrating a connection between the denial of plaintiff's 2018 application and his earlier lawsuit against the DOC. Instead, the material undisputed facts are that the application plaintiff completed in 2018 contained incomplete and inaccurate answers. The evidence also establishes that the DOC rejected plaintiff's 2018 application because plaintiff failed to include any information about his prior application to the DOC and his dismissal from the CST Academy in 2016. In short, plaintiff has not shown that he engaged in a protected activity when he submitted an incomplete and inaccurate employment application in

2018. He has also failed to present evidence that the DOC's decision to reject the 2018 application as incomplete and inaccurate was done in retaliation. Accordingly, we affirm the portion of the summary judgment order that dismissed plaintiff's retaliation claim under the LAD.

C.    Plaintiff's Punitive Damages Claim.

There are two essential prerequisites to an award of punitive damages under the LAD:  proof of "actual participation by upper management or willful indifference," and proof that the conduct was "especially egregious." Quinlan v. Curtiss-Wright Corp., 204 N.J. 239, 274 (2010) (quoting Rendine v. Pantzer, 141 N.J. 292, 313-14 (1995)).  Conduct that is sufficiently egregious to warrant a punitive damages award must be intentional wrongdoing "in the sense of an 'evil-minded act' or an act accompanied by a wanton and wilful disregard of the rights of another." Rendine, 141 N.J. at 314 (quoting Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 49 (1984)).

Plaintiff has not presented sufficient evidence to demonstrate that the DOC committed an evil-minded act against him.  While there are material issues of disputed fact concerning the DOC's bona fide effort to accommodate plaintiff's religious beliefs and whether that accommodation would create an undue hardship, there is no evidence of a willful indifference to plaintiff's

request for an accommodation or that the DOC's conduct relating to plaintiff was especially egregious. Therefore, we affirm the portion of the summary judgment order dismissing plaintiff's punitive damages claim under the LAD. That dismissal, moreover, was not premature because discovery had been completed, and plaintiff had the obligation to submit proof to support his claim for punitive damages. See Friedman, 242 N.J. at 472 (explaining that even if discovery has not been completed, summary judgment is not premature if the non-moving party cannot show that further discovery would supply the missing elements of a cause of action).

Reversed in part, affirmed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION